**BROOKSIDE VENEERS, LTD.,**
Plaintiff–Appellee,

v.

**The UNITED STATES,**
Defendant–Appellant.

**Appeal No. 87–1379.**

United States Court of Appeals,
Federal Circuit.

May 11, 1988.

Charles P. Deem, Stedina & Deem, New York City, argued for plaintiff-appellee.

Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Saul Davis.

Before MARKEY, Chief Judge, SKELTON and BALDWIN, Senior Circuit Judges.

BALDWIN, Senior Circuit Judge.

The United States (appellant) appeals from the judgment of the United States Court of International Trade, No. 81–9–01305,[1] sustaining Brookside Veneers, Ltd.'s (Brookside) claim that the imported materials in question were improperly classified as "[a]rticles not specifically provided for, of wood" under item 207.00 of Schedule 2, Part 1 of the Tariff Schedules of the United States (TSUS), and were correctly classifiable as "wood veneers, other" under TSUS Schedule 2, Part 3, item 240.03. Upon examination of the complete record and decisions below, this court finds that

---

1. The trial court's order denying appellants Rule 59 motion for a rehearing is published at 661 F.Supp. 620 (Ct.Int'l Trade 1987). This case has been designated a test case by the United States Court of International Trade.

the Court of International Trade incorrectly interpreted the relevant provisions of TSUS. We reverse.

## Background

During 1979, 1980, and 1981, the only years at issue here, Brookside imported wood products from Italy which, at the time of entry, were invoiced as "Manmade Veneer" or "recomposed veneers." The merchandise is created by first slicing veneers from a block of natural wood. These veneers are then dyed, stacked one atop another in a predetermined sequence, glued, and bonded by cold pressing to form a solid block. New veneers are sliced from this manmade block at varying angles to obtain the final product. Thus, the resulting veneers are dyed wood sheets, each consisting of pieces of cold pressed dyed wood and adhesive. The particular patterns cut are in response to customer requests. These manmade veneers are used in the same manner and for the same purposes as natural veneers—e.g., in the construction of a myriad of items, and as wall panelling.

The United States Customs Service (Customs) classified and liquidated Brookside's veneers as articles of wood, not specifically provided for under TSUS item 207.00, and assessed duties of 8%, 7.6%, and 7.3% for the years 1979, 1980, and 1981, respectively. 19 U.S.C. § 1500 et seq. (1976). After Brookside's protest under 19 U.S.C. §§ 1514 and 1515 was denied, it commenced an action in the Court of International Trade seeking reclassification of the veneers under TSUS item 240.03, wood veneers, other, assessable at rates of 2%, 2%/Free, and Free for 1979, 1980, and 1981, respectively.[2]

The Court of International Trade first considered "whether Congress manifested an intent to limit the definition of wood veneers to articles derived from logs and flitches." Slip op. at 6. The court held that the plain language of TSUS Schedule 2, Part 3, headnote 1(a) indicates a clear intent by Congress to limit wood veneers according to their source—logs and flitches. This provision also was relied on by the court for its finding that Congress did not intend that use be a consideration in classifying wood veneers under Schedule 2, Part 3.

The court next considered whether the manmade blocks from which Brookside's veneers are sliced are logs or flitches within the meaning of headnote 1(a). After reviewing standard lexicographic material, the court concluded that it is "not clear that the words log or flitch as provided by these definitions and enunciated by Congress in the provision defining wood veneers are precise and should be understood to mean a log or flitch in a natural state." Slip op. at 10. The court found that log or flitch reasonably includes Brookside's manmade block because the latter possesses an "essential resemblance" to logs as referred to in headnote 1(a). The court held that Brookside had rebutted the statutory presumption of correctness accorded customs classifications, and ordered a reclassification and reliquidation under item 240.03.

Appellant argues that the trial court misapprehended the burden of proof which the statutory presumption of correctness places on Brookside. Appellant asserts that Brookside did not provide the trial court with a scintilla of factual evidence to support any of its contentions, and therefore the trial court erred in finding that Brookside successfully rebutted that presumption. The statutory presumption of correctness is explicitly stated in 28 U.S.C. § 2639(a)(1):

> [I]n any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision.[3]

---

2. The duty on hardwood veneers was eliminated by Congress in 1980. Pub.L. No. 96–609, § 116, 94 Stat. 3555, 3559 (codified at 19 U.S.C. § 1202).

3. This presumption did not, as appellant suggests, require Brookside to demonstrate that Customs' classification was wrong *because* Brookside's proposed classification was correct.

Appellant asserts that the trial court misapprehended Brookside's burden in overcoming this presumption because Brookside presented no lexicographic, legal, or other authority which suggests that the terms log and flitch can be defined to include Brookside's manmade blocks. Appellant argues further that the processing which Brookside's manmade blocks have undergone places them outside the definitions of log and flitch. Lastly, appellant claims headnote (1) is a clear legislative expression that veneers such as Brookside's, and the blocks from which they are cut, are outside the scope of item 240.03.

In opposition, Brookside argues that the stipulation of facts in lieu of trial included sufficient evidence, in the form of trade publications and company brochures, to support the trial court's conclusion. Brookside contends that the treatment of wood veneers under prior tariff schedules supports the conclusion that Congress intended to include under item 240.03 products which are commercially considered and used as wood veneer. Brookside also urges that commercial and use definitions, as well as legislation subsequent to the enactment of the items in question, dictate the result reached by the trial court. Finally, Brookside suggests that the definitions of log and flitch would create anomalous results if read to restrict those terms to their natural state. Instead, Brookside urges us to interpret log and flitch to include artificial logs and flitches.

## OPINION

It is settled that the meaning of tariff terms is a question of law, while the determination of whether a particular item fits within that meaning is a question of fact. *Stewart–Warner Corp. v. United States*, 748 F.2d 663, 664–65 (Fed.Cir.1984); *Daw Industries, Inc. v. United States*, 714 F.2d 1140, 1141–42 (Fed.Cir.1983). In this case, we are presented with both questions. Be-

fore we can decide whether Brookside's merchandise is within item 240.03, we must first determine the scope of the terms wood veneer, log, and flitch as they are used in item 240.03.

Wood veneers are defined in headnote 1(a) of Schedule 2, Part 3 of TSUS as:

Wood sheets or strips, regardless of thickness, quality or intended use, produced by the slicing or rotary cutting of logs or flitches; and wood sheets, not over 1/4 inch in thickness, produced by sawing and of a type used to overlay inferior material.

█ It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Reid v. Dept. of Commerce*, 793 F.2d 277, 281–82 (Fed. Cir.1986). In headnote 1(a) Congress explicitly limited the definition of sliced wood veneers to those "sheets or strips" sliced from "logs or flitches." We agree with the trial court's conclusion that the use of the terms logs and flitches in headnote 1(a) was not superfluous. Rather, they were obviously inserted to limit sliced or rotary cut wood veneers under Schedule 2, Part 3 according to source. There is no disagreement that Brookside's veneers are sliced from manmade blocks, thus Brookside's veneers are subject to this limitation. However, Brookside argues that the language used in the Explanatory Notes accompanying items 240.02 through 240.06 of the Tariff Commission's Tariff Classification Study (1960), does not include a reference limiting wood veneers according to source, and therefore, no such limitation exists. This assertion fails to consider the express

See *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed.Cir.1984). While this court recognized that "[t]he best proof that a customs classification is wrong is proof that a different classification is right," *Jarvis Clark Co. v. United States*, 739 F.2d 628, 630 (Fed.Cir.1984), if we were to

hold that a plaintiff in a customs classification case is required to demonstrate that the original classification was incorrect *because* the proposed classification is correct we would be resurrecting the dual burden of proof.

language of headnote 1(a). Contrary to Brookside's claims, headnote 1(a) is precisely the indication which Brookside says does not exist—that Congress intended to limit wood veneers according to their source. We decline Brookside's invitation to look behind the plain and unequivocal language of the statute.

Headnote 1(a) also expresses Congress' intent that wood veneers not be classified according to their "intended use." Where such a clear expression of legislative intent of the definitional limitations of a tariff term exists, it is inappropriate for a court to frustrate that intent by looking to the common and commercial use of the item to obtain a definition. *Toyota Motor Sales, U.S.A., Inc. v. United States*, 585 F.Supp. 649, 655 (Ct.Int'l Trade 1984), *aff'd on the basis of the opinion below*, 753 F.2d 1061 (Fed.Cir.1985). The limitation expressed in headnote 1(a) adequately expresses Congress' intent that, insofar as wood veneers are concerned, intended use, commercial or otherwise, is irrelevant for purposes of customs classification, and we reject Brookside's arguments to the contrary. Congress cannot be *presumed* to have adopted a definition of wood veneer which was reflective of the commercial uses of that product when headnote 1(a) specifically rejects "intended use" as a means for identifying wood veneer. Brookside's argument that we consider the treatment of wood veneers under prior tariff schedules is, therefore, misplaced. We hold that sliced wood veneers are limited by the language of headnote 1(a) to veneers sliced from logs and flitches, and that the insertion of the words "regardless of * * * intended use" in headnote 1(a) constitutes sufficient evidence that Congress rejected the common meaning of wood veneer in favor of its own definition for tariff purposes.

■ As the trial court correctly noted, the source of wood veneer is dispositive in this case. Thus, we must consider what limitations, if any, Congress intended to

place on the terms log and flitch. Neither log nor flitch is defined in Schedule 2, Part 3. In the absence of evidence to the contrary (such as that seen above), "[t]he meaning of a tariff term is presumed to be the same as its common or dictionary meaning." *Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed.Cir.1984) quoting *Bentkamp v. United States*, 40 CCPA 70, 78 (1952). In addition, "[t]ariff terms are written for the future as well as the present," and, absent contrary legislative intent, "can be expected to encompass merchandise not known to commerce at the time of their enactment" provided the new articles bear an "essential resemblance" to the article in the statute. *U.S. v. Standard Surplus*, 667 F.2d 1011, 1014 (CCPA 1981). To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources. *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 673 F.2d 1268, 1271 (CCPA 1982); *Standard Surplus*, 667 F.2d at 1013.

■ The government points to several authorities which define log and flitch. Among these is the *Wood Handbook*, Forest Products Laboratory, Forest Service, U.S. Dept. of Agriculture, Agriculture Handbook No. 72 (1955) (Wood Handbook),[4] recognized by the trial court as the leading authoritative source in the industry. The *Wood Handbook* uses the following definitions:

*Log.*—A section of the trunk of a tree in suitable length for sawing into commercial lumber.

*Flitch.*—A portion of a log sawed on two or more sides and intended for remanufacture into lumber or sliced or sawed veneer. The term is also applied to the resulting sheets of veneer laid together in sequence of cutting.

*Wood Handbook*, at 485, 482. In the revised edition of the *Wood Handbook*, pub-

---

4. The 1955 edition is the edition which immediately preceded enactment of the TSUS provi-

sions considered here.

lished in 1974, log is not defined, while flitch is defined in similar words with the addition that the term is used "loosely."

The 1961 edition of *Webster's Third New International Dictionary* (Unabridged), which was an edition in print at the time Congress was considering the TSUS, defines these terms in similar fashion:

> *log:* 1 a: a usu. bulky piece or length of unshaped timber; *esp:* a tree trunk or a length of a trunk or branch trimmed and ready for sawing and usu. over six feet long * * *.

> *flitch:* 2 a: a longitudinal section of a log; as (1): an outer slab cut off in shaping a timber (2): a thick and often specially selected length of timber for further processing (as by cutting into veneer or turning) (3): a thick cut of timber with bark on one or more edges * * *. b: a complete package of thin sheets of veneer laid together in sequence as they are sawed or sliced * * *.

*Webster's*, at 1330, 871. Both definitions are substantially similar in subsequent editions as well. *See, e.g., Webster's Third New International Dictionary*, 1330, 871 (Unabridged 1968). *Id.* at 1330, 871 (Unabridged 1976).

It is clear from these definitions, of which Congress was presumably aware, that at the time of the enactment of the TSUS log and flitch referred to *natural* logs and *natural* flitches. Brookside argues, however, that Congress' failure to use limiting language such as "natural" precedent to "logs" and "flitches" precludes this court from defining wood veneers in such a restrictive manner. We disagree. The terms log and flitch require no qualifying language accompanying them because they present, by definition, sufficient limitation. We would render Congress' use of these words nugatory if we rejected their definitional limits in favor of the expansive reading proposed by Brookside.

The definition of log clearly contemplates something in a more natural state. In fact, the definition of log has always been limited to tree trunks or branches *before* they are cut. Similarly, flitch has always been defined with reference to either a log or veneer sheets laid in sequence *as they are cut.* The fact that the authors of the 1974 edition of the *Wood Handbook* added to the definition of flitch that the term is used "loosely" does not persuade us that it can be used so loosely as to include a manmade block of dyed, cold pressed, glued veneers. There is nothing in the definition of flitch which indicates that the "loosest" definition would include Brookside's artificial block. That part of the definition encompassing sheets of veneer laid together *in sequence of cutting* does not, to us, envision just any sheets of veneer put together. We read these words as recognition that flitch refers to the "portion of a [particular] log" both before and after cutting into veneers. They do not suggest that a flitch can or should include a block of veneers cold pressed for reslicing.

The trial court, in holding Customs' classification erroneous, remarked that the fact that the logs used to produce ordinary veneer undergo some processing prior to slicing would, if Brookside's veneers were excluded, require the exclusion of ordinary wood veneers from item 240.03. Slip op. at 10. We disagree with this conclusion. The definition of logs allows for processing to the extent necessary to prepare it for further sawing or slicing. *See Webster's,* supra. Thus, limited processing for this purpose does not change the basic nature of the log.[5]

As noted above, whether a particular item fits within the meaning of a tariff term is a question of fact, reviewable by this court under the clearly erroneous standard. *Stewart–Warner Corp.*, 748 F.2d at 665. A log is limited to tree parts—either trunk or branch. Since Brookside's block

---

5. We also reject the government's similar argument that wood veneer is not wood veneer because it has been dyed. There is nothing in the definition of wood veneer in headnote 1(a) which suggests that dyeing changes wood ve-

neer to something else. Because Congress chose to create its own definition of wood veneer, the court is bound by the parameters set therein.

clearly is not a tree part, it cannot be said to be a log within the meaning of that term, as it is used in headnote 1(a). To the extent the trial court found that Brookside's artificial block is a log, we hold that finding to be clearly erroneous.

Our determination of the definitional limits of flitch leads to a similar outcome. The only definition of flitch which could be argued to encompass Brookside's manmade block is the one which states that flitch includes veneers "laid together in sequence" as they are sliced. However, we have determined that a flitch is limited to a portion of a log before and after slicing. Since Brookside's block is not a log, it cannot be a flitch when the latter is limited to portions of a log. Nor can it be a flitch where that term is used in a general way to refer to the veneers, laid in sequence of cutting, which result from the slicing of a flitch or log. To the extent the trial court found that Brookside's artificial block bears an essential resemblance to a flitch, we also hold that finding clearly erroneous.

Brookside's contention that logs and flitches can reasonably be read to include the manmade blocks which it produces because these blocks bear an "essential resemblance" to natural logs and flitches is misplaced. Brookside presented no evidence indicating that log or flitch ever referred to anything other than wood in its natural state. We think Brookside, and the trial court, read too much into these terms. It is the use of the terms "logs and flitches" which constitutes the limiting language in headnote 1(a). If Congress had wanted to be more general in its treatment of wood veneers it could have selected terms which were not restrictive by their very nature, as are log and flitch.

Our holdings do not, as Brookside suggests, create anamolous results. Brookside states in its brief that "the parties have stipulated that Brookline veneer is used as veneer in making plywood" and "wood-veneer panels." Appellee's brief at 11. Brookside suggests that these stipulations constitute some sort of admission by appellant that plywood and wood-veneer panels made with Brookside's veneers are plywood and wood-veneer panels for tariff purposes. Thus, Brookside asserts, if Brookside's veneers are not veneers for tariff purposes, then plywood is not plywood and wood-veneer panels are not wood-veneer panels. But Brookside misinterprets these stipulations to mean far more than they say. The stipulations to which Brookside refers say only that Brookside's veneers are "used in the same manner and for the same purposes" as natural veneer. Stipulation of Facts in Lieu of Trial ¶¶ 5 and 5(a), at 2–3. They do not say that the finished products—plywood and wood-veneer panels—are those products for tariff or any other purposes. Thus, there is no anomaly which results from our decision. Whether plywood or wood-veneer panels or any other product made with Brookside's veneers fits within other specific tariff provisions is an issue which is not before us, and therefore one which we do not decide.

We hold that Brookside's veneers are not veneers within the meaning of headnote 1(a), and that the manmade blocks from which they are cut are neither logs nor flitches. We *reverse* the decision of the Court of International Trade holding Brookside successful in its rebuttal of the statutory presumption of correctness accorded customs classifications and ordering a reclassification under item 240.03, and reinstate the classification ordered by Customs.

REVERSED.