AMERICAN HARDBOARD ASSOCIATION, PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND MACMILLAN BLOEDEL LIMITED, PARTY-IN-INTEREST

Court No. 83–9–01301

(Decided August 1, 1988)

*Keck, Mahin & Cate* (*Brock R. Landry* and *Robin W. Grover*) for plaintiff.

*John R. Bolton,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Civil Division, United States Department of Justice (*Saul Davis*) for defendant.

*Dorsey & Whitney* (*John B. Rehm* and *Munford Page Hall, III*) for party-in-interest.

DICARLO, *Judge:* Plaintiff, a trade association of hardboard manufacturers, challenges the United States Customs Service (Customs) classification of merchandise imported from Canada by party-in-interest, MacMillan Bloedel Limited. Customs initially classified the merchandise as "[b]uilding boards not specially provided for, whether or not face finished: [o]ther boards of vegetable fibers (including wood fibers)—[o]ther," under item 245.90 of the Tariff Schedules of the United States (TSUS), but on remand following a trial determined the merchandise to be classifiable as "[b]uilding boards not specially provided for, whether or not face finished: [l]aminated boards, bonded in whole or in part, or impregnated, with synthetic resins," under item 245.80, TSUS. *See American Hardboard Ass'n* v. *United States,* 10 CIT 779, 651 F. Supp. 1441 (1986).

Plaintiff claims the merchandise is properly classifiable as "[h]ardboard, whether or not face finished: [o]ther," under item 245.30, TSUS, or alternatively as "[a]rticles not specially provided for, of wood," under item 207.00, TSUS. Party-in-interest claims the merchandise is properly classifiable under item 245.90, TSUS, as Customs originally determined.

Plaintiff initiated this action by filing a petition pursuant to 19 U.S.C. § 1516(a) (1982), and the Court has jurisdiction under 28 U.S.C. § 1581(b) (1982). The Court finds the merchandise properly classifiable under item 245.80, TSUS.

## DISCUSSION

The merchandise is either number one prefinished or number one bandsawn Champlain lap siding (lap siding). It is a plank of hardboard, 7/16-inch thick and either 9 or 12 inches wide. Approximately one inch from the bottom, a hard plastic locking strip or "spline" is fixed into a groove in the back of each plank. The top edge of each plank is machined to form a groove or "rabbet," which fits into the spline of the plank above.

The hardboard plank is manufactured through a wet process whereby wood fibers are combined with water, phenolic resin, wax and alum. This combination is fed onto a moving screen and is called a "wet mat." Compregnite is sprayed onto the surface fibers of the wet mat to stabilize the fibers against moisture. A newsprint paper face coated with linseed oil is then applied to the wet mat of wood fiber. At this point the mat is still approximately 70 percent water. The mat then goes on to the loading elevator and into a press. Through the combination of heat and pressure, the mat is formed into a hardboard plank.

The lap siding can have an embossed texture (bandsawn) in order to appear rough hewn or it can be smooth. In either case, the front face, bottom and top edges are prefinished by painting.

1

Plaintiff first contends the lap siding is hardboard classifiable in the *eo nomine* provision for hardboard, item 245.30, TSUS.

An *eo nomine* designation is one which describes a commodity by a specific name, usually one well known to commerce. *United States v. Bruckmann,* 65 CCPA 90, C.A.D. 1211, 582 F.2d 622 (1978). An *eo nomine* provision includes all forms of the named article unless limited by its terms, or contrary to legislative intent, judicial decisions, long standing administrative practice, or demonstrated commercial designation. *See, e.g., Crosse & Blackwell Co. v. United States,* 36 CCPA 33, C.A.D. 393 (1948). The lap siding is made of hardboard, so the Court must consider the scope of the *eo nomine* provision for hardboard in order to determine whether Congress intended to include merchandise such as this in that provision.

Defendant argues the phrase "whether or not face finished" limits the forms of hardboard classifiable under item 245.30, TSUS, claiming Congress through this language intended to exclude any form of hardboard which had been advanced by means other than face finishing.

Headnote 2, Part 3, Schedule 2, TSUS, states that the "term *'face finished',* as applied to the boards and panels provided for in this part [Part 3], means that one or both surfaces of a panel or board have been treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints or enamels, or have been overlaid with paper, fabric, plastics, base metal or other material." (Emphasis in original).

The legislative history of the hardboard provision contained in the 1960 *Tariff Classification Study* indicates the phrase "whether or not face finished" was added to clarify that the *eo nomine* provision for hardboard was intended to cover hardboard even though it had undergone the various treatments described in the definition of "face finished:"

The products covered in this part are sometimes finished with materials such as varnish, lacquers, paint, plastic, or metal. *In order that such products might be adequately covered in this part,* the term 'face finished' has been introduced and defined in headnote 1(f) [now Headnote 2, Part 3, Schedule 2, TSUS].

4 *Tariff Classification Study* 64 (1960) (emphasis added). The study indicates that the phrase "whether or not face finished", rather than as words of limitation, was intended to expand the term hardboard to include the various described processes, which had been creating ambiguities and uncertainties due to the many paragraphs in the previous tariff schedule providing separate classifications for hardboard subjected to different processes. *See id.* at 63–67.

The Court does not find the phrase "whether or not face finished" to be restrictive language excluding from the *eo nomine* provision forms of hardboard which have undergone processing other than that defined as face finishing. *Cf. Norman G. Jensen, Inc.* v. *United States,* 2 CIT 198 (1981) (descriptive phrase "ground or unground" is an extension rather than a restriction on *eo nomine* provision for "screenings").

The study indicates, however, that the hardboard designated *eo nomine* is a basic, fungible material capable of being used for a variety of functions:

Hardboard is used chiefly in construction, in cabinet and millwork, in furniture and fixtures, and other fabricated and industrial products, in transportation equipment, for display purposes, in games, toys, and sporting products; also, a high-density type of hardboard is used for dies in spinning and forming light-gage metals, for jigs and templates, and for structural electrical-insulation material.

4 *Tariff Classification Study* 67. This legislative history indicates that at some point the material designated as hardboard and provided for *eo nomine* under item 245.30, TSUS, may no longer be within that classification because it has been advanced beyond a basic, fungible material and has become a new and different article of commerce.

Considering hardboard as a basic material which becomes another product due to advancements is analogous to those cases involving the question of whether merchandise made from lumber is classifiable as lumber or as some new article of commerce made from lumber. *See, e.g., Permagrain Prods. Inc.* v. *United States,* 9 CIT 426, 623 F. Supp. 1246 (1985), *aff'd,* 4 Fed. Cir. (T) 87, 791 F.2d 914 (1986).

Also, in *All Channel Prods. Corp.* v. *United States,* 1 CIT 128 (1981), the court noted that although an *eo nomine* provision covers all forms and varieties of the named commodity, there is a point where the addition of parts and functions transforms the object into something else. In that case, the addition of wires to switches to

provide a distinct function related to the reception of television signals precluded classification of the merchandise as switches.

Rather than remaining input material used to make sundry other products, articles of hardboard can undergo advancements and become new and different articles of commerce such as furniture, games, pieces of industrial equipment, etc. As plaintiff stipulates, " '[h]ardboard' is no loger known as 'hardboard' once it is incorporated into, or becomes part of, another product," i.e. a bookcase built solely from hardboard as its raw material, sawn to size, and nailed together, is known as a bookcase and not as hardboard. *See* Stipulations 23, 27 and 28.

The Court finds the legislative history limits the *eo nomine* provision for hardboard to a basic, fungible material, and the determination whether particular merchandise is covered *eo nomine* under item 245.30, TSUS, depends on the factual advancements unique to that particular product made of hardboard.

In this case, the merchandise is face finished hardboard cut to size and machined to specifications (rabbetted). A plastic spline has been permanently attached which makes the article suitable only for use as interlocking siding in construction. The Court finds the lap siding has been advanced beyond the basic, fungible material known as hardboard and is therefore not classifiable under item 245.30, TSUS.

2

Plaintiff next contends the lap siding cannot be classified as building boards under item 245.80, TSUS, because the TSUS defines building boards as panels, panels are required to be flat, and this merchandise with its protruding plastic spline is not flat.

Building boards are defined in the TSUS as "[p]anels of rigid construction, including tiles and insulation board, chiefly used in the construction of walls, ceilings, or other parts of buildings." Headnote 1(e), Part 3, Schedule 2, TSUS. The term "panels" is not defined in the headnotes nor is it discussed in the *Tariff Classification Study.*

The meaning of terms used in the TSUS is a question of law, and whether a particular item fits within that meaning is a question of fact. *See, e.g., Brookside Veneers, Ltd.* v. *United States,* 847 F.2d 786, 788 (Fed. Cir. 1988). In the absence of evidence to the contrary, the meaning of a term in the TSUS is presumed to be its common or dictionary meaning. *Id.* at 789. The Court may rely upon its own understanding of the term and consult lexicographic and scientific authorities and other reliable sources of information to ascertain the common meaning of a tariff term. *Id.* at 789.

The 1961 edition of *Webster's Third New International Dictionary* (unabridged), which was an edition in print at the time Congress was considering the TSUS, defines panel in several ways:

3 * * * a separate or distinct part of a surface * * * as a: a fence section (as the part between two posts in a rail fence): HURDLE **b** (1): a thin usu. rectangular board set sunken in a frame (as in a door, wainscot, or chair back) (2): a usu. sunken or raised section of a surface (as a wall or ceiling) set off by a molding or other margin sometimes of different material or color (3): a flat usu. rectangular piece of construction material (as plywood, metal, concrete, plastic) made usu. in a standard size to form part of a surface (as a wall, ceiling, floor) * * *

Handbooks by the United States Department of Agriculture are also authoritative sources. *See Brookside Veneers,* 847 F.2d at 789. The handbook *Wood-Frame House Construction,* Forest Serv., United States Dep't of Agric. Handbook No. 73 (1955), defines panel in several ways too:

A large, thin board or sheet of lumber, plywood, or other material. A thin board with all its edges inserted in a groove of a surrounding frame of thick material. A portion of a flat surface recessed or sunk below the surrounding area, distinctly set off by molding or some other decorative device. Also, a section of floor, wall, ceiling, or roof, usually prefabricated and of large size, handled as a single unit in the operations of assembly and erection.

None of the various definitions by these two authoritative sources exclude a relatively smooth surfaced article with a slight protrusion from being a panel.

The Court finds the trial testimony instructive. Testimony indicates that in the wood products industry various articles are referred to or recognized as panels, even though the articles have protrusions jutting from a relatively smooth surface. Trial Transcript of Jan. 21–24, 1986 at 462–65, 681–84, 746–47, 798. *See also* Defendant's Exhibits D, AA, AV, at Trial of Jan. 21–24, 1986. A brochure in evidence printed by party-in-interest to market the lap siding refers to it as a panel. *See* Defendant's Exhibit D, at Trial of Jan. 21–24, 1986. Based on this evidence of how the lap siding was marketed, and on the pertinent lexicographic and technical sources, trial testimony, exhibits, and its own examination of the imported merchandise, the Court finds the lap siding is a panel within the meaning of the term "panels" as used in defining building boards for purposes of the TSUS. Also, based on its own examination of the merchandise and on the trial testimony, the Court finds that the lap siding is a panel "of rigid construction * * * chiefly used in the construction of walls * * * or other parts of buildings," within the meaning of the definition of "building boards" set forth in the TSUS.

3

Party-in-interest does not contest Customs' determination that the lap siding is building board, but rather contends it is not "laminated" building board within the meaning of that term as used in item 245.80, TSUS. Party-in-interest first asserts the process by which the fibers of the newsprint and wet mat are fused together precludes a possibility that the lap siding is a "laminated" product, arguing the processes of fusion and lamination are separate and exclusive.

The term "laminated" is not defined in the TSUS nor is its meaning discussed in the *Tariff Classification Study*. The Court again refers to its own understanding of the term and consults lexicographic and other reliable sources to ascertain the common meaning. *See Brookside Veneers,* 847 F.2d at 789.

*Webster's Third New International Dictionary* (unabridged) (1961) defines the adjective "laminated" as "* * * made by laminating: composed of layers of firmly united material * * *", and the verb "laminate" as "to make by uniting superimposed layers of one or more materials (as by means of an adhesive or bolts)." The 1955 edition of the *Wood Handbook,* Forest Prods. Laboratory, Forest Serv., United States Dep't of Agric. Handbook No. 72, at 485, defines "laminate" as "[a] product made by bonding together two or more layers (laminations) of material or materials."

The Court finds the process by which the lap siding is made falls within these definitions. The layer of newsprint is united to the wet mat layer. Whether by fusion of the fibers or the binding activity of the resins, this union does not preclude the board from being "laminated" within the meaning of that term as used in the TSUS. The Court considers the wet mat of wood fibers to be a layer of material, even though it might not be considered a solid, finished product.

Party-in-interest also asserts the term "laminated" as used in the TSUS requires the final product to have visible, distinct layers, claiming the fusion of the fibers in the newsprint with those in the wet mat leaves no visible, distinct layers.

Even assuming a product must have visible, distinct layers to be "laminated" as party-in-interest claims, the Court finds the lap siding has these elements. At the trial on the lamination issue, the Court closely examined an unpainted sample of the lap siding, at times using a 10-power magnifying glass. The Court also observed a demonstration in which a Customs official using an isopropyl alcohol swab and a razor successfully lifted a portion of the newsprint from the hardboard substrate. From its own examination and the demonstration, the Court found that it could see two distinct layers in the lap siding—the newsprint overlay and the hardboard substrate. Trial transcript of Feb. 17, 1987 at 320–21.

At the time the Court made its finding, it recognized that fibers from the newsprint and the hardboard substrate had intermingled to some extent. The intermingling of the fibers did not destroy either the visibility or distinctness of the two identifiable layers.

Party-in-interest asserts that the Court saw layers only because of the color differences between the lighter newsprint fibers and the darker fibers in the hardboard substrate, arguing that color differences do not satisfy the visible, distinct requirements of the term "laminated."

The Court does not agree that color differences can not evidence a product is laminated. In this case, the color establishes the existence of the newsprint fibers, most of which do not intermingle with the fibers of the hardboard substrate since the color differences remain. It may be that if a newsprint more akin to the color of the hardboard substrate were used the Court would not see two layers, but it is not that merchandise which is before the Court. The Court finds that the lap siding is "laminated" within the meaning of that term as used in item 245.80, TSUS.

### 4

Plaintiff contends in the alternative that the lap siding is classifiable in the basket provision for "[a]rticles not specially provided for, of wood," under item 207.00, TSUS. If, however, the lap siding is classifiable as building board under item 245.80, TSUS, it is specially provided for and classification in the basket provision for wood not specially provided for is precluded.

During a phone conference, and again at a second trial following Custom's remand determination as to the proper classification of the merchandise, the Court ruled that the remand classification under item 245.80, TSUS, enjoyed the same presumption of correctness that originally attached to the classification under item 245.90, TSUS. *See* Trial Transcript of Feb. 17, 1987 at 2–5. Based on its own finding that the lap siding is building board within the meaning of that term as used in the TSUS and on this presumption of correctness, which both plaintiff and party-in-interest have failed to overcome, the Court holds that the lap siding is properly classifiable under item 245.80, TSUS. Thus classification under plaintiff's alternative claim, item 207.00, TSUS, is precluded.

### CONCLUSION

The Court holds the lap siding is properly classifiable as "[b]uilding boards not specially provided for, whether or not face finished: [l]aminated boards, bonded in whole or in part, or impregnated, with synthetic resins," under item 245.80, TSUS. Judgment will be entered accordingly.