**In re UNITED STATES, Petitioner.**

**Misc. No. 206.**

United States Court of Appeals,
Federal Circuit.

June 16, 1989.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for petitioner. With him on the brief were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director.

James K. Stewart, Schwalb, Donnenfeld, Bray & Silbert, P.C., Washington, D.C., argued, for respondent Meisel Rohrbau GmbH. Keith R. Anderson, Schwalb, Donnenfeld, Bray & Silbert, P.C., Washington, D.C., of counsel.

Clarence T. Kipps, Jr., Miller & Chevalier, Chartered, Washington, D.C., argued, for amicus curiae, U.S. Claims Court Bar Ass'n. With him on the brief was J. Bradford Anwyll.

Before FRIEDMAN, BISSELL and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

## ON PETITION FOR WRIT OF MANDAMUS

The United States requests this court to grant a writ of mandamus, pursuant to 28 U.S.C. § 1651(a) (1982), directing the United States Claims Court, in *Meisel Rohrbau GmbH v. United States*, Cl.Ct. No. 205–87C, to vacate its May 20, 1988 order which designated a United States consulate in the Federal Republic of Germany as the place for the taking of evidence by the court.

### Background

Meisel Rohrbau GmbH (Meisel) contracted with the United States, through the Department of the Army, to make repairs to military housing units in Germany. Pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–13 (1982), Meisel submitted to a contracting officer various claims, which were denied. Meisel filed this action in the Claims Court appealing that denial.

The Claims Court ordered the trial to be held in Frankfurt, Federal Republic of Germany (West Germany). The government moved for reconsideration, contending that the Claims Court was without statutory authority to schedule, attend or conduct any proceeding outside the territorial United States and that under 28 U.S.C. § 2505 (1982) it could only do so within the United States.

The Claims Court rejected the government's position principally because it considered its interpretation of section 2505 to be "overly restrictive" by failing to give full effect to other phrases in that section and the purpose behind the court's procedure. The Claims Court noted (1) that 28 U.S.C. § 173 (1982) permits it to "hold court at such times and in such places as it may fix by rule of court," (2) that Rule 39(a) of the Rules of the United States Claims Court (RUSCC) provides that "[a]ll contested issues of fact and law shall be tried at a location selected by the court," and (3) that the practice of setting proceedings in locations convenient to the plaintiff is provided by statute.

The Claims Court further justified "scheduling an evidentiary hearing in West Germany so that plaintiff is not unduly prejudiced by its election to pursue its contract claim in this court, rather than before the Armed Services Board of Contract Appeals." The ASBCA, according to the court, regularly conducts its hearings outside the territorial United States.

After setting forth this reasoning in support of its action, the Claims Court, nevertheless, significantly modified its earlier Order as follows:

> The taking of evidence pursuant to the Hague Convention on Taking of Evidence Abroad in Civil and Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444, shall commence on Wednesday, August 24, 1988, in a United States Consulate to be designated in West Germany. The court's presence at and participation in the taking of evidence shall be limited only by the Hague Convention and considerations of West German sovereignty.

While the modified Order is not entirely clear, we assume that the Claims Court still intends to hold its trial proceeding in Germany but, in doing so, would hold it in a consulate in an attempt to avoid West German sovereignty and comity implications, and would limit its presence and participation in such manner as may be required by the Hague Convention and West German sovereignty.[1]

---

1. Because we decide that the Claims Court does not have authority to conduct proceedings

The government has petitioned for a writ of mandamus to vacate the modified Order and to prevent the Claims Court from conducting the ordered proceeding outside the United States. Meisel submitted an opposition to the petition for mandamus. A brief *amicus curiae* was filed by the United States Claims Court Bar Association in opposition to the petition.

## OPINION

██ "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). *Accord Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 382–83, 74 S.Ct. 145, 147–48, 98 L.Ed. 106 (1953) (mandamus denied). "The traditional use of the writ ... has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). In this case, the writ is necessary and appropriate to restrict the Claims Court to statutorily authorized locations for conducting hearings.

In considering the reach of the Claims Court's authority, we are guided by the fundamental principle imbedded in the Constitution that all federal courts, except the Supreme Court, are established by Congress and possess only the jurisdiction granted to them by the Congress. U.S. Const. art. I, § 1. In the early case of *Cary v. Curtis,* 44 U.S. (3 How.) 236, 11 L.Ed. 576 (1845), the Supreme Court stated:

> [T]he judicial power of the United States ... is (except in enumerated instances applicable exclusively to this court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of congress, who possess the sole power of creating the tribunals (inferior to the supreme court) ... and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character

which to congress may seem proper for the public good.

*Id.* at 245, 11 L.Ed. 576. In *Palmore v. United States,* 411 U.S. 389, 401, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973), *Cary* was cited with approval and the long-established principle enunciated in that early case was expressly reaffirmed. *See also Kline v. Burke Constr. Co.,* 260 U.S. 226, 233–34, 43 S.Ct. 79, 82–84, 67 L.Ed. 226 (1922).

██ The Claims Court is a court established by the Congress under Article I of the United States Constitution. *See* 28 U.S.C. § 171(a) (1982). The powers of an Article I court are limited by what has been given it by specific act of Congress and by its own rules adopted pursuant to Congressional authority. *See Louisville Builders Supply Co. v. Commissioner,* 294 F.2d 333, 339–40 (6th Cir.1961) (Article I court without power to order the taking of a deposition to perpetuate testimony when a petition for redetermination of tax filed had not been filed with the court). *See also Miner v. Atlass,* 363 U.S. 641, 643–44, 80 S.Ct. 1300, 1302–03, 4 L.Ed.2d 1462 (1960) (district court has no inherent authority to order the taking of depositions for the purpose of discovery only); *Hanks Dental Ass'n v. International Tooth Crown Co.,* 194 U.S. 303, 309, 24 S.Ct. 700, 703, 48 L.Ed. 989 (1904) ("the courts of the United States are not given discretion to [take] depositions not authorized by Federal law").

██ Neither the Claims Court, Meisel, nor the brief of Amicus Curiae, point to any act of Congress as authority for the Claims Court to conduct proceedings abroad. In the absence of Congressional authorization, the Claims Court has no such power. The United States relies on 28 U.S.C. § 2505 (1982) as prohibiting extraterritorial Claims Court proceedings. That section provides:

§ 2505. *Trial before judges*

Any judge of the United States Claims Court may sit at any place within the

abroad, we do not address the applicability of the Hague Convention to this situation.

United States to take evidence and enter judgment.

The plain language of this statute grants the Claims Court authority to sit anywhere within the United States.

The government argues that by identifying where the court may sit other locations are excluded by implication. The Claims Court determined that such a reading of section 2505 would be "overly restrictive" because it "fails to give full effect to other phrases in Section 2505, and to the purpose behind Claims Court procedure." The court reasoned that section 2505 only limits the court's ability to take evidence *and* enter judgment. Thus, while apparently of the view that it could not both take evidence and enter judgment abroad, the Claims Court found no prohibition in section 2505 against simply taking evidence abroad and then entering judgment in the United States.

We reject such parsing of the statute. The statute by its terms only contemplates proceedings in the United States and it cannot be construed in a manner that would authorize the taking of evidence outside the United States. We garner from the statute neither the authorization necessary for such proceedings nor the prohibition urged by the United States.

Where "Congress has clearly stated its intent in the language of a statute, a court should not inquire further," *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 788 (Fed.Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988) except "in 'rare and exceptional circumstances,'" *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (quoting *TVA v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117 (1978)). "In the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.'" *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3122, 92 L.Ed.2d 483 (1986) (quoting *Consumer Product*

*Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The legislative history of section 2505 affords no evidence of legislative intention on this issue. The section as originally enacted had specific applicability to the former United States Court of Claims. It was amended, however, by the Federal Courts Improvement Act by substituting "United States Claims Court" for "Court of Claims" and "enter judgment" for "report findings." *See* Pub.L. No. 97–164, 96 Stat. 25 (codified in 28 U.S.C. §§ 171–177, 1295, 1491, 1631, 2503, 2510 and 2522 (1982) (under which the Claims Court was created in 1982). These changes were made without explanation in the committee reports. We must assume, however, that in making these changes Congress intended the amended section to have continuing effect and, in the absence of any contrary legislative history, the plain language is controlling.[2] *See United States v. James,* 478 U.S. at 606, 106 S.Ct. at 3122.

We disagree with the Claims Court's suggestion that its interpretation of section 2505 takes into account "the purpose behind Claims Court procedure." In this connection, the Claims Court pointed to other statutory provisions which indicate that its proceedings should be conducted in locations convenient to a plaintiff. It noted that 28 U.S.C. § 173 provides that the "Claims Court may hold court at such times and in such places as it may fix by rule of court" and directs that "[t]he times and places of the sessions of the Claims Court shall be prescribed with a view to securing reasonable opportunity to *citizens* to appear before the Claims Court with as little inconvenience and expense to citizens as is practicable," and that 28 U.S.C. § 2503(c) provides that "[h]earings shall, if convenient, be held in the *counties* where the witnesses reside" (emphasis added). These provisions do not expressly authorize the conduct of proceedings outside of the United States and facially suggest to the

**2.** The Amicus brief suggests that section 2505 is an anachronism, but that suggestion must be rejected because of the amendments and updating of the section in the Federal Courts Improvement Act.

opposite conclusion by referring to the "counties" and to "citizens." [3]

■■■ The Claims Court also referred to its own rules which provide for trials "at a location selected by the court" and state that the court will not ordinarily furnish a reporter for a trial held in a place other than a "State of the United States or the District of Columbia." *See* Rule 39 RUSCC. While the statute gives the Claims Court authority to prescribe rules of practice or procedure for the conduct of its proceedings, *see* 28 U.S.C. § 2503(b), neither the above rule nor any other rule of the court authorizes, or otherwise indicates that the court intended to authorize, the conduct of a trial proceeding in a foreign country. Accordingly, we conclude that the Claims Court's determination to hold trial proceedings in West Germany cannot be supported by the other statutory provisions or the rules which it has promulgated.

■■■ Finally, the Claims Court stated that "[i]f the Claims Court is proscribed from conducting a hearing outside the territorial United States on a contract claim ... then a foreign contractor is, in effect, denied the election to pursue a claim in the Claims Court." Underlying the court's reasoning is its observation that "[t]he ASBCA regularly conducts its hearings outside the territorial United States." Even though it may be more inconvenient and costly for a foreign contractor to litigate his contract claim in the United States, the contractor is not thereby denied the opportunity to pursue his claim in the Claims Court. Further, Congress, in waiving sovereign immunity, may prescribe the forum and conditions under which it can be sued and such waivers cannot be implied but must be unequivocally expressed. *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941) ("consent of the Government to be sued ... is a relinquishment of sovereign immunity [and] must be strictly interpreted"). Thus,

whether or not the ASBCA is authorized and conducts hearings outside the United States is immaterial. If the Claims Court lacks authority, it cannot conduct its proceedings overseas merely because of the ASBCA's practice. "Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. Commissioner*, 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984).

Accordingly, the petition for writ of mandamus is granted, and the case is remanded to the Claims Court with instructions to vacate its May 20, 1988 order.

PETITION GRANTED AND CASE REMANDED.

FRIEDMAN, Circuit Judge, dissenting.

I would deny the petition for mandamus because I think that a judge of the Claims Court may take evidence outside the United States.

A. The settled practice of the Court of Claims of conducting evidentiary hearings outside the United States, which Congress recognized and apparently approved, and did not change when it created the Claims Court in 1982, authorizes the judges of the Claims Court to conduct such proceedings.

1. Section 2505 of Title 28 (1982) provides:

> Any judge of the United States Claims Court may sit at any place within the United States to take evidence and enter judgment.

This section had its origin in a 1930 statute that authorized the judges of the Court of Claims themselves to conduct evidentiary hearings. Prior to that time, only the trial commissioners of the Court of Claims, whom the court appointed, held evidentiary hearings. From the time of its establishment in 1855, the Court of Claims utilized commissioners to preside at the taking of depositions. At least three of those com-

---

**3.** In 1 U.S.C. § 2 (1982), the word "county" is defined to include a "parish, or any other equivalent subdivision of a State or Territory *of the United States.*" (Emphasis added.)

Similarly, in using the term "citizens" it is doubtful that Congress contemplated that it was authorizing the Claims Court to travel abroad for the convenience of foreign contractors.

missioners were stationed in England. *See* 2 W. Cowen, P. Nichols, Jr., M. Bennett, *The United States Court of Claims: A History* 92 (1978) (hereinafter *Court of Claims History*). In 1925 Congress authorized the commissioners to preside at formal trials and prepare formal findings of fact, but did not preclude them from taking evidence overseas. Act of Feb. 24, 1925, ch. 301, 43 Stat. 964–65.

The 1930 Act provided that "The Chief Justice [as the Chief Judge of the Court of Claims was then called], or any judge of the Court of Claims, may sit at any place within the United States to take evidence in any case instituted in said court." Act of June 23, 1930, ch. 573, 46 Stat. 799. The legislative history of that Act indicates that the provision was designed to permit the judges of the Court of Claims themselves to take testimony, in order to alleviate the heavy backlog of cases on the commissioners' dockets. As the House Report explained:

> The amendment ... provides that the chief justice or any associate judge may take testimony in any case pending,.... The purpose and necessity for this provision, suggested by the court itself, is found in the existing situation as to the commissioners' present docket and anticipated increases....
>
> ....
>
> The court, rather than ask for an increase in the number of commissioners, feels that the granting of this power to the judges will render the aid essential to meet the existing situation with respect to the preparation of cases for prompt disposition.

H.R.Rep. No. 274, 71st Cong., 2d Sess. 1–2 (1930).

This provision thus was not intended to control the places where the Court of Claims could hold evidentiary hearings, but to expand the category of individuals who could conduct those hearings.

The provision was codified in 1948 at 28 U.S.C. § 2505 and the wording changed to read: "Any judge of the Court of Claims may sit at any place within the United States to take evidence and report findings." Act of June 25, 1948, ch. 646, 62 Stat. 976. The language remained the same until it was changed to its present form in the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25.

The Federal Courts Improvement Act created this court and the Claims Court, transferred to the latter court the trial jurisdiction that the trial commissioners of the Court of Claims previously had exercised, and gave the judges of the Claims Court authority to enter final judgment. The Federal Courts Improvement Act made two changes in section 2505: (1) It substituted "United States Claims Court" for "Court of Claims," and (2) it changed the authority of the judges from "report[ing] findings" to "enter[ing] judgment."

2. In its amicus brief, the Bar Association submitted an affidavit by the clerk of the former Court of Claims and now the clerk of the Claims Court, Frank T. Peartree, describing his review of "the dockets and official records maintained in the Clerk's office showing reimbursements made for expenses of commissioners and judges of the United States Court of Claims incurred in foreign travel in connection with evidentiary proceedings held abroad since 1960." Mr. Peartree attached "[a] representative listing of cases involving such travel and hearings." He listed 13 cases (4 of which were congressional reference cases) in which evidentiary proceedings were held in Italy, Austria, Germany, England, Sweden, France, and Spain. Similarly, the Court of Claims History, written by three judges of that court and published in 1978, reported that "[b]y agreement of the parties and permission of foreign governments, the trial judges have also taken proof in Australia, Canada, the Philippine Islands, England, and most of the countries of Western Europe." *Court of Claims History* at 168.

In creating the Claims Court in 1982, Congress intended that court to have the same trial jurisdiction and, with two exceptions not here pertinent (entering final judgment and issuing injunctions against pre-award challenges to government contracts), the same authority the Court of Claims had exercised through its Trial Division. H.R.Rep. No. 312, 97th Cong., 1st Sess. 46 (1982). The Trial Division, and

sometimes the judges themselves, frequently conducted evidentiary hearings abroad. Apparently there was no question about or challenge to the authority of the Court of Claims to conduct such hearings. In his affidavit Mr. Peartree stated: "My records as to the listed cases do not reflect any objections being raised by any party regarding the propriety of conducting said evidentiary proceedings abroad or of reimbursement of such travel expenses."

Considering all the circumstances, I conclude that Congress intended the judges of the Claims Court to have the same authority to take evidence abroad that the trial commissioners and judges of the Court of Claims had exercised without challenge for many years. There is no indication, or even suggestion, that in routinely changing the applicability of Section 2505 from the Court of Claims to the Claims Court, Congress intended to alter the judges' authority to take evidence abroad.

B. The 1970 statute creating the Court of International Trade, as the successor to the Customs Court, stated:

Upon application of a party or upon his own initiative, and upon a showing that the interests of economy, efficiency, and justice will be served, the chief judge may issue an order authorizing a judge of the court to preside in an evidentiary hearing in a foreign country whose laws do not prohibit such a hearing.

28 U.S.C. § 256(b). In explaining the advantages of giving the judges of the Court of International Trade this authority, the House Committee Report stated:

The authority to conduct evidentiary hearings in foreign countries has been exercised in the past by the commissioners (and by at least one judge) of the United States Court of Claims. It does not appear to have ever been questioned.

H.R.Rep. No. 1067, 91st Cong., 2d Sess. 15, *reprinted in* 1970 U.S.Code Cong. & Admin.News 3188, 3202.

During the hearing on the legislation, reference was made to this practice of the Court of Claims. *See* Hearings on S. 2624 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 91st Cong., 1st Sess. 74-75

(1969) (statement of Rao, C.J., Ct. Int'l Trade); Hearings on S. 2624 Before the Subcomm. No. 3 of the House Committee on the Judiciary, 91st Cong., 2d Sess. 149 (1970) (statement of Rep. Kastenmeier).

Since Congress was giving the judges of the new court a power that the judges of the predecessor Customs Court had not had or exercised, it was not surprising that Congress explicitly provided for it. The significant fact about this provision, however, is that in adopting it, Congress recognized that it was conferring the same authority that the commissioners and at least one judge of the Court of Claims previously had exercised.

C. The court stresses that the Claims Court is one of limited authority and concludes that because Congress has not explicitly authorized the judges of that court to conduct evidentiary hearings abroad, that power should not be inferred. The commissioners of the Court of Claims, however, and even the judges themselves, over a substantial period of time conducted evidentiary hearings abroad, and did so without apparent challenge to the propriety of that practice. "[E]stablished practice may shed light on the extent of power conveyed by general statutory language." *Federal Trade Comm'n v. Bunte Bros.*, 312 U.S. 349, 352, 61 S.Ct. 580, 582, 85 L.Ed. 881 (1941).