SEARS ROEBUCK AND CO., Plaintiff,

v.

**UNITED STATES, Defendant.**

**Court No. 87–09–00946.**

United States Court of
International Trade.

April 27, 1992.

Barnes, Richarson & Colburn, Donald J. Unger and Brian F. Walsh, Chicago, Ill., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Nancy M. Frieden, Stephen Berke, U.S. Customs Service, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Plaintiff challenges Customs' classification of camcorders as a combination article consisting of a television camera and a tape recorder under item 685.49, Schedule 6, of the Tariff Schedules of the United States (TSUS). The merchandise was described in plaintiff's invoices as a "color video sound camera (video camera & recorder)" which was introduced to the United States market in the mid–1980's. Plaintiff claims the merchandise contains neither a television camera nor a tape recorder as those tariff terms were commonly known at the time they were enacted and proposes several alternative classifications. The Court holds that the merchandise does not consist of a television camera and remands the action to Customs for it to determine the classification of the merchandise.

## DISCUSSION

"[T]he meaning of tariff terms is a question of law, while the determination whether a particular item fits within that meaning is a question of fact." *E.M. Chemicals v. United States*, 8 Fed.Cir. (T) ——, ——, 920 F.2d 910, 912 (1990). If congressional intent is clearly expressed in the language of a tariff provision, the court should not inquire further into the meaning of that provision. *Brookside Veneers, Ltd. v. United States*, 6 Fed.Cir. (T) 121, 124, 847 F.2d 786, 788, *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). If a contrary intent is not evident, the court is to construe the term according to its common and commercial meaning. *Id.* at 125, 847 F.2d at 789.

The court is to determine the meaning of a tariff term as of the time of enactment of the provision. *Sears, Roebuck & Co. v. United States*, 46 CCPA 79, 82, C.A.D. 701 (1959). Subsequent definitions may not be used to expand the meaning of a term, but only as an aid to clarifying it. *Id.* In determining the common meaning of a tariff term, the court "may

rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Brookside Veneers, Ltd.,* 6 Fed.Cir. (T) at 125, 847 F.2d at 789. Since the tariff terms involved in this action were enacted in 1962, *see* Tariff Act of 1962, Pub.Law. 87–456, 76 Stat. 72, *reprinted in* 77A Stat. (compiling entire TSUS), "more weight should be given to definitial sources existing closer to that time." *Alexandria Int'l, Inc. v. United States,* 13 CIT 689, 695 (1989).

▮ Defendant argues although the merchandise did not exist when the tariff term for television camera was enacted, the TSUS provision for television camera is an *eo nomine* provision, which in the absence of limitations or a contrary legislative intent, includes all forms of the product. *Tomoegawa USA, Inc. v. United States,* 12 CIT 112, 116, 681 F.Supp. 867, 870, *aff'd in part, vacated and remanded in part,* 7 Fed.Cir. (T) 29, 861 F.2d 1275 (1988). Also, in the absence of contrary legislative intent, tariff terms " 'can be expected to encompass merchandise not known to commerce at the time of their enactment' provided the new articles bear an 'essential resemblance' to the article in the statute." *Brookside Veneers, Ltd.* 6 Fed.Cir. (T) at 125, 847 F.2d at 789 (quoting *United States v. Standard Surplus Sales,* 69 CCPA 34, 38, 667 F.2d 1011, 1014 (1981)). Defendant relies upon several sources published in the 1970's and 1980's for the proposition that a television camera incorporates three essential elements: a lens, pickup device and electronic circuitry. *E.g.,* 13 *McGraw–Hill Encyclopedia of Science and Technology* 541–42 (5th ed. 1982). Defendant claims that since the merchandise contains a lens, a pickup device and electronic circuitry, it bears an essential resemblance to television studio cameras and portable television cameras used in electric news gathering (ENG).

Plaintiff argues that although the merchandise has been described as a video camera/recorder, video and television are not synonymous. In support, plaintiff notes defendant's expert testified that video is a broader term than television. Tr. at 334; *see also id.* at 258–59 (plaintiff's expert testified the meaning of television has been expanded far beyond its original meaning). Plaintiff continues it is possible for an article to contain a video camera component without containing a television camera component. Plaintiff contends the merchandise does not contain a television camera because it is not used in television broadcasting.

Television is defined in *Webster's New International Dictionary of the English Language, Second Edition, Unabridged* (1961), as:

Vision at a distance; hence, the transmission and reproduction of a view or scene, esp. a view of persons or objects in motion, by any device which converts light rays into electrical waves and reconverts these into visible light rays.

That source defines television camera as:

The part of a transmitting apparatus in which the image of the scene to be televised is formed for conversion into electrical impulses.

*Id.* at *Addenda,* cii. Another source available at the time of enactment of the provision defines television camera as:

That part of the transmitter which consists of a lens and a special cathode-ray tube containing a plate on which the image to be televised is projected for transformation into a flow of electrons.

*Webster's New World Dictionary, College Edition* (Copyright 1960). A scientific authority available at the time of enactment of the TSUS provides:

Television Camera The pickup unit used to convert a scene into corresponding electric signals. Optical lenses focus the scene to be televised on the photosensitive surface of the camera tube. This tube breaks down the visual image into small picture elements and converts the light intensity of each element in turn into a corresponding electrical signal. Also called camera and telecamera.

*The Electronics and Nucleonics Dictionary* (Copyright 1960).

These definitions indicate a television camera converts visual images and sounds

into electric signals and is used in connection with television transmission apparatus in transmitting electrical waves over a distance. Defendant's definition that a television camera consists of a lens, pickup device and electronic circuitry is inadequate because it does not include the essential element that television cameras are used in connection with television transmission apparatus. While the merchandise shares three important elements with television cameras, this does not support defendant's position that everything containing those elements is a television camera.

■■■ The use of an article is important in determining whether an article is within the scope of an *eo nomine* provision. *United States v. Quon Quon, Co.,* 46 CCPA 70, 73, C.A.D. 699 (1959). A witness for plaintiff testified the merchandise is not a television camera because it lacks systems which allow it to be connected to television transmission apparatus. *Id.* 46 CCPA at 75–76. Defendant's expert testified that to use the merchandise in connection with television transmission apparatus would be a fugitive use of the merchandise, Tr. at 319, 370–72, and that he did not know of any cases where the merchandise had been so used. Tr. at 319. He also testified that camcorders are not manufactured to send signals to portable transmitters, satellite transmitters or up-link transmitters used in ENG for television broadcast purposes. Tr. at 322–23. In addition, he testified that the merchandise is not interchangeable with television cameras, such as the studio camera which both experts agreed is a television camera. Tr. at 388. At trial, the Court found that most people buy the merchandise to take the place of and to perform the same functions as home movie cameras. Tr. at 426.

■■■ Based upon the testimony of the witnesses, the lexicographic authorities, an examination of the merchandise and its own understanding of the term, the Court finds the merchandise does not consist of a television camera since it is not used in connection with television transmission apparatus. A television camera was used in connection with television transmission apparatus for television broadcasting purposes. The merchandise is used for home recording, and its primary purpose is to make a tape of what appears before the lens. It is used as a substitute for motion picture film cameras.

## CONCLUSION

Since the Court finds that the merchandise does not consist of a television camera, plaintiff has overcome the presumption of correctness attaching to Customs' classification of the merchandise as a combination article consisting of a television camera and a tape recorder. *See* 28 U.S.C. § 2639(a)(1) (1988). The Court remands the action to Customs for it to determine the classification of the merchandise in a manner consistent with this opinion.