**THK AMERICA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 90–09–00488.**

United States Court of
International Trade.

Nov. 1, 1993.

Sonnenberg, Anderson & Rodriguez, Steven P. Sonnenberg and Jacqueline M. Paez, Chicago, IL, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, and Saul Davis, Sr. Trial Atty., of counsel: Ste-

phen Berke, U.S. Customs Service, Washington, DC, for defendant.

## OPINION

TSOUCALAS, Judge:

This action comes before the Court after trial *de novo* on November 10–24, 1992. Plaintiff, THK America, Inc. ("THK"), challenges the United States Customs Service's ("Customs") classification of plaintiff's imports of Linear Motion Guide Systems ("LMGs") as ball bearings pursuant to Harmonized Tariff Schedule of the United States ("HTSUS") 8482.10.50. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

### Background

The merchandise at issue, the Linear Motion Guide System, consists of two main components: a steel block and a matching rail. The LMG's block is composed of a hardened steel block, four rows of steel balls, a retainer, plastic end plates, rubber seals and a grease nipple. The block moves in a linear fashion along the rail while supporting a load. The balls in the steel block act as an antifriction device and facilitate accurate positioning of the load. Plaintiff's Exhibits 1, 2, 3.

The balls in the steel block recirculate along four elliptical paths. These paths are comprised of a loading zone and an unloading zone. The loading zone is the portion of the path formed by grooves ground into the block and along the rail. This is the zone where contact between the steel block and the rail occurs through the balls. Trial Transcript ("T.T.") at 170. The unloading zone consists of elbow-shaped paths at the end plates and a return tube drilled through the block. It allows recirculation of the balls but does not support any load. *Id.*

The rail of the LMG is a steel "T-shaped" rail. The top portion of the rail has four longitudinal grooves ground into it. *Id.* at 417. These grooves are "crowned." Crowning is the slight angling at the sides of the longitudinal grooves which helps to prevent drastic deformation of the steel balls as they enter the loading zone that could produce unwanted vibrations in the system when moving the load. When the block moves along the rail, the recirculating balls travel along these grooves from a loaded to an unloaded state. Holes are drilled through the rail and also through the block to facilitate mounting of these components to a bed and table respectively. *Id.* at 232, 416–17.

LMGs are sometimes used in configurations of multiple blocks and rails, *e.g.,* two rails and four blocks or one rail and two blocks. These various configurations allow each block to share equally in the absorption of erratic movements caused by distorted mounting surfaces. *Id.* at 286–88, 293, 432–33, 652.

Each combination of blocks and rails is a unique set. They are made and sold together. A user can install the system by mounting the rail onto the surface of a bed and mounting the table on the block. *Id.* at 153, 164.

THK has been shipping this type of merchandise to the United States since the early 1970's. LMGs are mainly used by the machine tool and automotive industries in machine tools that require high accuracy in positioning control. *Id.* at 28. As the machine tool industry in the United States began to decline, THK shifted its marketing strategies and targeted its sales toward other industries which require high accuracy in positioning control. Examples of machine tools utilizing LMGs include lathes, welding robots, "pick and place" robots, and x-ray machines and tables. *Id.* at 31, 33–39; *see* Plaintiff's Exhibits 7, 9, 10, 11.

LMGs were developed to replace the conventional slide, commonly known as the slide bearing or plain bearing. T.T. at 189, 370. A slide is a positioning mechanism used to transport and position machinery parts in a linear direction. A slide basically consists of a sliding saddle, antifriction material and a sliding guide surface. *Id.* at 203; Plaintiff's Exhibit 33. Conventional slides are limited in their positioning accuracy due to the magnitude of friction encountered in various applications and the need for clearance between the parts of the slide to overcome this friction. Clearance in a slide is the open space between the two sliding surfaces which allows for the introduction of a lubricant which reduces friction. Clearance is essential for the slides' movement but may cause the load to move erratically thus degrading position-

ing accuracy. T.T. at 208–09. All conventional slides have various degrees of clearance which produce a different range of accuracy in positioning. *Id.* at 562–64.

THK's LMGs were developed from the ball bushing. Plaintiff's Exhibit 28. A ball bushing is cylindrical in shape and encompasses six rows of balls rolling in a longitudinal direction on the inner surface of the ball bushing. The load that a ball bushing can carry is small. T.T. at 191. The ball bushing travels linearly on a cylindrical shaft.

From ball bushings, THK developed the ball spline. This product is a cylinder containing six rows of balls which roll in a longitudinal direction on the inside of the ball spline. This cylinder fits over a circular shaft with three longitudinal projections with grooves on each side of the projections. The rows of balls in the cylinder grab the grooved projections on the shaft. The ball spline also moves linearly along the cylindrical shaft but has greater positioning rigidity and load capacity than the ball bushing. *Id.* at 191–92; Plaintiff's Exhibit 31. A series of improved LMGs were subsequently developed from the ball spline. Each new LMG provided a greater load capacity, greater rigidity and greater accuracy in terms of the movement and positioning of loads. T.T. at 193–201; Plaintiff's Exhibit 28.

In its catalogs and brochures prior to 1986, THK described its linear bearings, including LMGs, as antifriction bearings and linear bearings. Defendant's Exhibits A–E. It advertised its LMGs to the machine tool industry as "the Very Best in Japanese Linear Bearing Technology." Plaintiff's Exhibit 4; T.T. at 18–19. Plaintiff's witness, Mr. Yoichi Matsushita, Executive Vice President of THK America, testified that in 1986 THK began changing its marketing strategy and stopped referring to these products as antifriction bearings or linear bearings and started to refer to them solely as Linear Motion Guide Systems. *Id.* at 28–29.

In addition, the patents for LMGs described and categorized LMGs as "linear ball bearing unit"; "linear motion ball bearing unit"; "linear ball bearing"; "linear slide ball bearing"; "recirculating ball linear bearing"; "linear sliding ball bearing" and "rectilinear slide ball bearing." Defendant's Exhibits L1–L10.

On December 5, 1977, Customs issued Headquarters Ruling 053086 classifying products similar to THK's LMGs under item 680.90 of the Tariff Schedules of the United States ("TSUS") which provided in part "machinery parts not containing electrical features and not specifically provided for." Plaintiff's Exhibit 13. On June 3, 1983, Customs issued a new Headquarters Ruling 072587 changing the classification of linear motion bearings from TSUS 680.90 to TSUS 680.39, the provision for ball and roller bearings. Defendant's Exhibit M1. This ruling was intended to encompass all imported linear bearings including THK's LMGs. T.T. at 467. However, between 1982 and 1988, THK continued to import its LMGs under TSUS 680.90, the tariff classification for machinery parts not specifically provided for which was in use prior to the entry into effect of the HTSUS on January 1, 1989, at the ports of Chicago, Los Angeles and New York. Plaintiff's Exhibit 15.

On August 18, 1988, Customs issued a letter ruling to THK informing them that their LMGs were classifiable as ball bearings. Customs reasoned that the primary function of the LMG was "friction reduction, other features such as stability and rigidity are by-products of this bearing construction." Plaintiff's Exhibit 14. THK has since entered and liquidated its LMGs using the HTSUS ball bearing provisions. The entries at issue in this case were entered after the August 18, 1988 ruling.

Pursuant to 19 U.S.C. §§ 1514, 1515 (1988), THK timely filed protests of Customs' classifications which were denied and this action ensued.

Customs classified the merchandise at issue pursuant to the following HTSUS heading:

| | |
|---|---|
| 8482 | Ball or roller bearings, and parts thereof: |
| 8482.10 | Ball bearings: |
| 8482.10.50 | Other..........11% |

Plaintiff argues that Customs' classification is wrong and believes the merchandise should be classified under the following HTSUS heading:

8485        Machinery parts, not containing electrical connectors, insulators, coils, contacts or other electrical features, and not specified or included elsewhere in this chapter:

8485.90.00    Other ..................5.7%

### Discussion

#### 1. *Plaintiff's Motion to Strike*

■ Pursuant to Rule 7(f) of the Rules of this Court, a request to strike all or a portion of a party's submissions to the Court should be made as a separate motion to strike. Plaintiff's counsel has incorrectly made a motion to strike as part of plaintiff's reply brief. However, the Court will treat plaintiff's incorrectly submitted request to strike as a motion to strike properly filed under USCIT R. 7(f). *Plaintiff's Reply Brief* at 1–7.

This court has stated that:

> The granting of a motion to strike constitutes an extraordinary remedy, and should be granted only in cases where there has been a flagrant disregard of the rules of court. *Accord Application of Harrington,* 55 CCPA 1459, 1462, 392 F.2d 653, 655 (1968). Hence, courts will not grant motions to strike unless the brief demonstrates a lack of good faith, or that the court would be prejudiced or misled by the inclusion in the brief of the improper material. *See Edge Import Corp. v. United States,* 82 Cust. Ct. at 344.

*Jimlar Corp. v. United States,* 10 CIT 671, 673, 647 F.Supp. 932, 934 (1986).

This Court is capable of deciding this case based on the trial transcript and the evidence developed at trial. The Court also finds that there was no lack of good faith on the part of the defendant. Therefore, plaintiff's motion to strike the statement of facts in defendant's brief is denied.

#### 2. *Classification of the LMGs*

The Court notes that, pursuant to 28 U.S.C. § 2639(a)(1) (1988), tariff classifications made by Customs are presumed correct and the burden of proof is upon the party challenging the classification to prove that Customs' classification is incorrect. *See, e.g., Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). To determine whether the party challenging Customs' classification has overcome the statutory presumption of correctness, this Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir. 1984).

■ The meaning of a tariff term is a question of law to be decided by the court, whereas the determination of whether a particular article fits within that meaning is a question of fact. *Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840 (Fed.Cir. 1989). When a tariff term is not clearly defined in either the HTSUS or its legislative history, the correct meaning of the term is generally resolved by ascertaining its common and commercial meaning. *W.Y. Moberly, Inc. v. United States,* 924 F.2d 232, 235 (Fed.Cir.1991). In order to determine the common meaning of a tariff term, the court may rely on its own understanding of the term, as well as consult dictionaries, lexicons and scientific authorities. *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 788 (Fed.Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

Plaintiff asserts that the imported merchandise is not classifiable under HTSUS subheading 8482.10.50, which refers to ball bearings. Plaintiff argues that the tariff term "ball bearings" refers to antifriction devices designed to facilitate rotating motion which consists of an outer ring, an inner ring, balls and possibly a cage. *Plaintiff's Post–Trial Brief ("Plaintiff's Brief")* at 47–55; *see* Plaintiff's Exhibits 18, 21. Plaintiff claims that since an LMG is a linear product, not a rotating product and does not have rings, LMGs do not fall within the common meaning of ball bearing and, thus, may not be classified under HTSUS 8482.10.50. *Plaintiff's Brief* at 47–55. Alternatively, plaintiff argues that even if the term ball bearing is found to encompass linear ball bearings, a

Linear Motion Guide System is more than a ball bearing. *Id.* at 57–67. Plaintiff argues that its early catalogs and advertising terminology and the Explanatory Notes to the Harmonized Tariff Schedule of the United States ("Explanatory Notes") are not dispositive as to the correct classification of LMGs. *Id.* at 43–47, 67–71; *see* 3 Customs Co-operation Council, Harmonized Commodity Description and Coding System Explanatory Notes at 1324.

Defendant argues that LMGs fit within the intended scope of the HTSUS tariff term ball bearings. Defendant also points to agency practice, the Explanatory Notes and THK's use of ball bearing terminology in its advertising and catalogs as support for its position. *Brief for the United States, Defendant ("Defendant's Brief")* at 35–59.

▆ This Court finds that there is no clearly stated Congressional intent as to the meaning of the tariff term ball bearing. Therefore, this Court must construe the tariff term ball bearing according to its current common and commercial meaning. To do so, this Court has consulted various lexicons, dictionaries and other reliable information sources for the common and commercial meaning of the term ball bearing. *Brookside Veneers,* 847 F.2d at 788.

This Court finds that the most authoritative set of definitions in regard to the terms involved in this case are contained in the American National Standard AFBMA Standard Terminology for Anti-friction Ball and Roller Bearings and Parts developed by The Anti-friction Bearing Manufacturers Association, Inc. ("AFBMA") and accepted by the American National Standards Institute, Inc. ("ANSI"). Defendant's Exhibit H. AFBMA is the association of U.S. antifriction bearing manufacturers. ANSI is an institute which verifies that certain procedural and consen-

sus standards have been met when an industry wide standard is issued.

The 1984 version of this document, which was in effect at the time of the importation of the LMGs which are the subject of this case, defines ball bearing as "[a] rolling bearing with balls as rolling elements." Defendant's Exhibit H at 2. A rolling bearing is defined as:

> A bearing operating with rolling rather than sliding between the parts supporting load and moving in relation to each other. It comprises raceway members and rolling elements with or without means for their spacing and/or guiding. It may be designed to support radial, axial or combined radial and axial load.

Defendant's Exhibit H at 12. An axial load is "[a] load acting in a direction parallel with the bearing axis." Defendant's Exhibit H at 2. In other words, an axial load is a load which may be acting in a linear direction. A raceway is "[t]he surface of a load supporting part of a rolling bearing suitably prepared as a rolling track for the rolling elements." Defendant's Exhibit H at 11. Finally, a linear motion bearing is defined as "[a] rolling bearing design for linear relative motion between its raceways in the direction of rolling."[1] Defendant's Exhibit H at 8.

It is clear to this Court that the subject LMGs clearly fall within the above definition of ball bearings. Both ball bearings and linear motion bearings are defined as a type of rolling bearing. All parties agree that LMGs have two raceways upon which the rolling elements, in this case recirculating balls, travel. THK argues that ball bearings must have a ring and that LMGs do not have a ring. *Plaintiff's Brief* at 48–55. However, the above definitions clearly show that the key structural components of ball bearings are raceways and the use of balls as rolling

---

1. Other definitions of the term ball bearing include:

[MECH ENG] An antifriction bearing permitting free motion between moving and fixed parts by means of balls confined between outer and inner rings.

McGraw–Hill Dictionary of Scientific and Technical Terms 147 (3rd ed. 1984).

The McGraw–Hill Encyclopedia of Science & Technology defines antifriction bearings, of which ball bearings are a subgroup, as:

A machine element that permits free motion between moving and fixed parts. Antifrictional bearings are essential to mechanized equipment: they hold or *guide* moving machine parts and minimize friction and wear.

1 McGraw–Hill Encyclopedia of Science & Technology 601 (5th ed. 1982) (emphasis added).

elements, not the presence of rings. LMGs have raceways and use balls as their rolling element.

The classification of THK's LMGs as ball bearings is also supported by the way THK marketed its LMGs in its pre–1986 catalogs and advertisements. While an importer's catalogs and advertisements are not dispositive in determining the correct classification of goods under the HTSUS, they are certainly probative of the way the importer viewed the merchandise and of the market the importer was trying to reach. *Marubeni America Corp. v. United States*, 17 CIT ——, ——, 821 F.Supp. 1521, 1528 (1993). In its pre–1986 advertisements and catalogs, THK referred to its LMGs as "linear *ball bearing* unit," "linear motion *rolling* type bearings," "*rolling-element* linear-motion bearings," "linear motion bearing units" and "linear motion *antifriction* bearings." Defendant's Exhibits A–E (emphasis added). In addition, while also not dispositive, the description of a product contained in the manufacturer's U.S. patents can also shed light on what the manufacturer believes the merchandise is. In its U.S. patents, THK's founder described LMGs as a "linear *ball bearing* unit," "linear motion *ball bearing* unit," "linear slide *ball bearing*," "linear sliding *ball bearing*," "rectilinear slide *ball bearing*" and a "recirculating *ball linear bearing*." Defendant's Exhibit L1–L10 (emphasis added).

In addition to definitions of ball bearings, methods of advertising and patent applications, this Court has also consulted the Explanatory Notes in regard to the classification of ball bearings under the HTSUS. Upon enactment of the HTSUS, Congress stated that:

The Explanatory Notes constitute the Customs Cooperation Council's official interpretation of the Harmonized System. They provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system.

The Explanatory Notes were drafted subsequent to the preparation of the Harmonized System nomenclature itself, and will be modified from time to time by the CCC's Harmonized System Committee. Although generally indicative of proper interpretation of the various provisions of the Convention, the Explanatory Notes, like other similar publications of the Council, are not legally binding on contracting parties to the Convention. Thus, while they should be consulted for guidance, the Explanatory Notes should not be treated as dispositive.

Omnibus Trade and Competitiveness Act of 1988, Conference Report to Accompany H.R. 3, H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), U.S.Code Cong. & Admin.News 1988, 1547, 1582.

The Explanatory Note which deals with the classification of ball bearings states:

The bearings classified in this heading include:

(A) **Ball bearings,** with single or double rows of balls. This group also includes **slide mechanisms with bearing balls,** for example:

. . . .

(3) The free travelling type, of steel, comprising a segment, a casing enclosing the bearing balls, and a guide rail with a groove of triangular section.

Explanatory Notes at 1324 (emphasis in original).

Both plaintiff and defendant's witnesses agree that example number 3 was inexpertly written. T.T. at 122–24, 395, 399, 630–31, 639. The witnesses disagree as to whether example number 3 applies to THK's LMGs. *Compare* T.T. at 122 *with* T.T. 395, 399–400, 640–43. Much time was spent at trial in trying to determine if example number 3 was meant to encompass THK's LMGs. While the Court believes that a reasonable interpretation of example number 3 would allow for classification of LMGs as ball bearings, this Court does not believe reference to example number 3 is necessary. The primary definition of ball bearings clearly states that the tariff term ball bearings is meant to include **"slide mechanisms with bearing balls."** Explanatory Notes at 1324 (emphasis in original). It is manifestly clear to this Court that THK's LMGs are slide mechanisms with bearing balls and are, therefore, properly classified as ball bearings under HTSUS 8482.10.50.

Finally, plaintiff argues that, assuming *arguendo* that LMGs are bearings, LMGs have become more than just a linear ball bearing and, therefore, should not be classified as a ball bearing. *Plaintiff's Brief* at 57–67. In *Nootka Packing Co. v. United States*, 22 CCPA 464, 470, T.D. 47464, 1935 WL 2283 (1935), the Court of Customs and Patent Appeals found that a tariff provision covers all forms of the named article. As this court has stated "[i]t is conducive to the steady and predictable development of the tariff law that inventive improvements which continue to be known by a traditional name not be excluded from a class simply because of their new physical characteristics." *Atlas Copco North America, Inc. v. United States*, 17 CIT ——, ——, Slip Op. 93–206 at 10, 837 F.Supp. 423, 426–27 (1993). This Court finds that LMGs are an improved version of a linear ball bearing and have not been so advanced as to warrant being taken out of the tariff classification for ball bearings.

### Conclusion

For the reasons discussed above, this Court finds that Customs' classification of THK's LMGs as ball bearings under HTSUS 8482.10.50 is correct. This case is dismissed.