THE ITEM CO., INC. D/B/A BLUE RIDGE: THE ITEM CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 95–05–00617

(Decided July 26, 1995)

*deKieffer Dibble & Horgan (J. Kevin Horgan)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, United States Department of Justice *(Mikki Graves Walser)* for defendant.

## OPINION

MUSGRAVE, *Judge:* Plaintiff Blue Ridge challenges the classification by the United States Customs Service ("Customs") of merchandise it attempted to enter into the United States. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

Plaintiff attempted to enter its goods ("TV Companions") from the Peoples Republic of China into the U.S. (Port of Atlanta) on March 8, 1995. The merchandise was excluded by Customs on March 9, 1995. Plaintiff protested the exclusion on March 13, 1995. The protest was denied on April 11, 1995. Customs issued a ruling stating the basis of the exclusion was that the items were properly classifiable under headings 6304.92 and 6304.93 HTSUS ("Other furnishing articles, * * *), items which require a textile quota for entry. HQ 956658. Plaintiff filed a summons in this Court on May 1, 1995. Plaintiff requested an expedited trial which was held on July 11th and 12th, 1995.

## DISCUSSION

The merchandise in question, "TV Companions," are toy-like figures in the shape of animals and humans, stuffed throughout, and are weighted with pellets on the interior bottom portion of the figure. The outer shell of the figure consists of textile material. Attached to the bottom edge of each figure is a flat textile panel with pockets. The panel is

designed to hang from the weighted figure when the figure is placed on furniture, televisions, or ledges. The pockets are designed to hold small magazines—such as a television guide, and a television remote control. The figures are designed to be both humorous and decorative. The articles are entitled with such names as "TV Bunny," "TV Duck," "Channel Cat," "TV Hound," and the "TV Kitty."

Customs classified the items at issue under heading 6304.92 and 6304.93 of the 1995 Harmonized Tariff Schedule of the United States ("HTSUS"). These headings are set out below (in bold), among the other headings of chapter 63, as follows:

## CHAPTER 63

## OTHER MADE UP TEXTILE ARTICLES; NEEDLECRAFT SETS; WORN CLOTHING AND WORN TEXTILE ARTICLES; RAGS

### I. OTHER MADE UP TEXTILE ARTICLES

| | |
|---|---|
| 6301 | Blankets and traveling rugs: |
| * | * * * * * * |
| 6302 | Bed linen, table linen, toilet linen and kitchen linen: |
| * | * * * * * * * |
| 6303 | Curtains (including drapes) and interior blinds; curtain or bed valances: |
| * | * * * * * * |
| 6304 | Other furnishing articles, excluding those of heading 9404[1]: |
| 6304.11 | Bedspreads: Knitted or crocheted |
| * | * * * * * * |
| 6304.91.00 | Other: Knitted or crocheted |
| * | * * * * * * |
| **6304.92.00** | **Other: Not knitted or crocheted, of cotton ............ 7.1%** |
| **6304.93.00** | **Not knitted or crocheted, of synthetic fibers .... 10.5%** |
| 6304.99 | Not knitted or crocheted, of other textile materials: |
| | Wall hangings of wool or fine animal hair: |
| * | * * * * * * |
| | Other: |
| | Of vegetable fibers (except cotton): |
| 6304.99.25 | Wall hangings of jute |
| * | * * * * * * |
| 6304.99.40 | Certified hand-loomed and folklore pillow covers of wool or fine animal hair |
| 6304.99.60 | Other |
| 6305 | Sacks and bags, of a kind used for the packing of goods: |
| * | * * * * * * |
| 6306 | Tarpaulins, awnings and sunblinds; tents; sails for boats, sailboards or landcraft; camping goods |
| * | * * * * * * |

Plaintiff claims its articles should be classified among the following:

| | |
|---|---|
| 6307 | Other made up articles, including dress patterns: |
| 6307.10 | Floorcloths, dishcloths, dusters and similar cleaning cloths: |
| 6307.10.10 | Dustcloths, mop cloths and polishing cloths, of cotton ........ |
| 6307.10.20 | Other ............................................... |

---

[1] Heading 9404 HTSUS includes the following: Mattress supports; articles of bedding and similar furnishings (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered.

| | | |
|---|---|---|
| 6307.20.00 | Lifejackets and lifebelts ...................................... | |
| 6307.90 | Other: | |
| 6307.90.30 | Labels ..................................................... | |
| 6307.90.40 | Cords and tassels .......................................... | |
| 6307.90.50 | Corset lacings, footwear lacings or similar lacings ............... | |
| 6307.90.60 | Surgical drapes: | |
| * | * * * * * * | |
| 6307.90.75 | Toys for pets, of textile materials ............................. | |
| 6307.90.85 | Wall banners, of man-made fibers ............................ | |
| 6307.90.89 | Other: | |
| | Surgical towels; cotton towels of pile or tufted construction; pillow shells, of cotton; shells for quilts, eiderdowns, comforters and similar articles of cotton ................................ | |
| **6307.90.99** | **Other** ............................................. | **7%** |

This action is before the Court for *de novo* review. 28 U.S.C. § 2640(a)(1). Customs' classification decision is presumed to be correct. The burden of proving otherwise rests with the party challenging that decision. 28 U.S.C. § 2639(a)(1) (1988). The Court is obligated to determine whether Customs' classification is correct both independently and in comparison with plaintiff's proposed classification. Where the Court determines both classifications to be incorrect, the Court may decide the correct classification or remand where it deems appropriate. *Jarvis Clark Co. v. U.S.,* 733 F.2d 873, 878, 881, *reh'g denied,* 739 F.2d 628 (Fed. Cir. 1984). In deciding the proper classification the Court first ascertains the proper meaning of the terms in the specific tariff provisions, then determines whether the merchandise at issue belongs within the given classification. *See Sports Graphics, Inc. v. U.S.,* 24 F.3d 1390, 1391 (Fed. Cir. 1994).

In ascertaining the proper meaning of a given term, the Court is required to employ the General Rules of Interpretation which require that an article be classified as follows[2]:

> 1. * * * for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions * * *
>
> * * * * * * *
>
> 3. When * * * goods are, *prima facie,* classifiable under two or more headings, * * * the heading which provides the most specific description shall be preferred to headings providing more general descriptions.
>
> * * * * * * *
>
> 4. Goods which cannot be classified in accordance with the above rules shall be classified under the heading appropriate to the goods to which they are most akin.

Additionally, the Court of Appeals for the Federal Circuit has stated the following regarding interpretation of tariff provisions:

> When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common meaning. A

---

[2] Harmonized Tariff Schedule of the United States, General Rules of Interpretation, Rule 1, 3, 4 (1995).

court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities, to determine the common meaning of a tariff term. Additionally, a court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings.

*Mita Copystar America v. United States,* 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citations omitted). Similarly, this Court has stated that the language of a tariff term is to be given its common or commercial meaning. *THK America, Inc., v. United States,* 17 CIT 1169, 1173, 837 F. Supp. 427, 431 (1993). Furthermore, a court may consider, in addition to the language and other pertinent indication of legislative intent, other related provisions of the tariff schedule. *West Bend Co., Div. of Dart Ind., Inc. v. United States,* 892 F.2d 69 (Fed. Cir. 1989).

The issue before the Court is whether "TV Companions" may be construed as textile "furnishings" or "other made up articles" under Chapter 63 of the HTSUS. Hence the Court must determine the meanings of those terms, employing the principles set out above, in order to ascertain the proper classification of the articles in question.

Plaintiff put forth two witnesses in support of its position. Mr. Capps is President and one of two owners of the company which designs and imports the TV Companions. He has spent most of his career in sales and marketing of novelty items and decorative items for the home. In addition, he has traveled extensively in his sales and marketing capacity to department stores and trade shows. Mr. Capps testified that the TV Companions are designed as an organizer to hold a remote control and television guide, and are intended to be used principally in the home but can also be used out of doors or in vehicles.

Mr. Capps testified regarding two catalogs of its licensors which illustrate the products licensed to carry the logo of each licensing organization. *Plaintiff's Exhibit* 4. The National Football League Merchandise Catalog 95 categorized products by, among other things, novelties and home products. That catalog listed plaintiff's merchandise not in the home products section, but the novelties section. The Looney Tune Licensee Catalog similarly listed plaintiff's company under the gifts and novelties section as opposed to the domestics and housewares section of its catalog.

In addition, plaintiff put before Mr. Capps other items not in issue but nonetheless probative of the meaning of the various tariff terms. For example, Mr. Capps testified that a shoe storage bag is made of textile, is intended to be used in the home to store and organize shoes, and can be made decorative. A pajama bag is similarly made of textile, is intended to be used in the home as a storage or organizer for pajamas, and is decorative. A bed spread, on the other hand, is intended to provide warmth and to protect the bed, and is decorative. Mr. Capps testified that the TV

Companions share more of the essential characteristics of a shoe storage bag or pajama bag than those of a bedspread.

Mr. Capps testified that in his opinion, textile furnishings are primarily decorative, protective and flat items such as bed sheets, and that TV Companions were not textile furnishings. Mr. Capps also stated that to his knowledge, his company does not sell TV Companions to furnishings sections of department stores. Lastly, Mr. Capps stated that to his understanding, Chapter 63 deals with textile articles, and that the term "furnishing" within that chapter means textile furnishings.

On cross-examination, Mr. Capps admitted that heading 6304 does not state "textile home furnishings," just "furnishings," and that in his opinion the term "other" means different than the preceding headings. Mr. Capps also stated that the term "furnishings" is broad, and can include such items as tabletop items, gift wares, wall hangings, sheets, electrical items, etc. and that his article could be considered a home furnishing in the broad sense of that term. Mr. Capps also stated that novelty items can be considered furnishings. Finally, Mr. Capps stated that the term "furnishing," means that it is useful in the home.

Mr. Bruce Reiss is President, Chairman, Chief Executive Officer, and owner of Decorite, Inc., a company which manufactures decorative home furnishings, to include pillows and textile furnishings. He spent several years in sales and marketing before becoming senior vice president of Best Products, a catalog showroom merchandising chain which grew during his tenure from $10 million to $860 million in sales. Mr. Reiss testified that textile furnishings are items such as bedding, towels, sheets, blankets; items used generally in the home as coverings; draperies, curtains, and wall hangings. Mr. Reiss stated that TV Companions are not textile furnishings. Mr. Reiss also stated that TV Companions are not similar to the items in heading 6304. He further stated that the articles in issue were not similar to bedspreads, wallhangings, or antimacassars.

On cross examination, Mr. Reiss stated that furnishings, in the broad sense include not only home textile furnishings, but all items used in the home, such as coffee pots, giftware, furniture, *etc.* Mr. Reiss testified that a shoe bag and pajama bag, in the broadest sense are furnishings. Lastly Mr. Reiss stated that if the term "furnishings," as used in the statute encompassed all of these items, than the statute is different than the commercial meaning of the term furnishings as it is used in conjunction with textiles.

Defendant put forth Professor George Leib of the Fashion Institute of Technology ("FIT"). Like the witnesses before him, Professor Leib has had a varied and long career in the retail merchandise field, to include purchasing, import product development, and eight years on the FIT faculty. Professor Leib testified that the articles in issue were "furnishings," which he defined as a product that is used with or an accessory to a basic product. Furnishings can be further delineated into various categories, such as "men's furnishings," "women's furnishings," *etc.* Profes-

sor Leib testified that a "tidy" is something that we would now call an organizer, for example items in the Rubbermaid product line. He also testified that a novelty item does not necessarily mean the item is not also a furnishing.

On cross-examination, Professor Leib stated that furnishings is a very broad category. He said that there is no such thing as a textile furnishings department within a department store. He further stated that textile furnishings means nothing more than a furnishing that is made of textiles. Professor Leib stated that the TV Companions were not similar in design, function, or use to curtains and drapes, and mosquito nets, but were similar in function to pajama bags and shoe bags. He further stated that the TV Companions were more similar to pajama bags and shoe bags than to pillow covers and wall hangings. Lastly Professor Leib insisted his definition of furnishings was narrower than that of the statute, despite stating that a shoe bag is a furnishing, even though the Explanatory Notes do not classify it as such.

From the testimony alone, it is uncertain how broad the term "furnishing" is as it is used in the tariff schedule. While plaintiff's witnesses testified that the term referred to textile home furnishings such as towels, sheets, bedspreads, curtains and drapes, they admitted that TV Companions could be considered a furnishing in the broad sense of home furnishing. Defendant's witness testified that there is no commercial category for textile home furnishings, and that the term "furnishing," as used under heading 6304 means any furnishing made of textile.

To help in resolving the conflict in testimony, the Court turns to the related provisions of Chapter 63. Upon examining the entire chapter, it is clear that for the article to be classified under heading 6304 it must fall somewhere between bedspreads (6304.11) and wall hangings (6304.99), and that these items are considered "other" made up textile furnishing articles when referenced to blankets and traveling rugs (6301); bed linen, table linen, toilet and kitchen linen (6302); curtains, blinds, and valances (6303). Furthermore, the exclusion of the items of heading 9404[3] from heading 6304 demonstrates that heading 6304 is sufficiently narrow so as not to include textile articles that have springs, or are stuffed or internally fitted; and that the term "furnishings" in heading 6304 is not so broad as to include anything used in the home that is made of textile material, as is urged by defendant.

The remaining headings of Chapter 63 also support such a construction. Sacks and bags (heading 6305) could certainly be considered furnishings under the definition urged by defendant. Heading 6307 includes items as disparate as floorcloths and dishcloths (6307.10), which could also presumably be considered furnishings; lifejackets (6307.20); and toys for pets (6307.90.75). This heading is intended as a basket type provision for articles that do not fit within the other headings of Chapter 63, and more readily accommodates the broad array of

---

[3] See footnote 1, *supra.*

items defendant would have termed furnishings and placed under heading 6304.

That TV Companions do not fit under heading 6304 is further supported by the Explanatory Notes[4] for each of the headings claimed by defendant and plaintiff respectively. The Explanatory Notes for heading 6304 state as follows:

> These articles include wall hangings and textile furnishings for ceremonies (*e.g.,* weddings or funerals); mosquito nets; bedspreads (but **not including** bed coverings of **heading 94.04);** cushion covers, loose covers for furniture, antimacassars; table covers **(other than** those having the characteristics of floor coverings * * *); mantlepiece runners; curtain loops; valances **(other than** those of **heading 63.03)** (bold in original).

These items, besides being made of textiles, all share certain essential characteristics, *i.e.,* they are primarily flat items which serve protective, as well as decorative functions. These primary characteristics are not the same as the principal characteristic of TV Companions, which, as testified to by all three witnesses, is to aid in the organization or storage of magazines and remote controls.

The Explanatory Notes to heading 6307 state, among other things, as follows:

> This heading covers made up articles of any textile material which are **not included** more specifically in other headings * * *.
> It includes, in particular:
>
> (1) Floor cloths, dish cloths, dusting cloths and similar cleaning cloths * * *
> (2) Life-jackets and life-belts.
> (3) Dress patterns made of stiff canvas * * *
> (4) Flags, pennants and banners, including bunting for entertainments * * *
> (5) Domestic laundry or shoe bags, stocking, handkerchief or slipper sachets, pyjama or nightdress cases and similar articles.
> (6) Garment bags (portable wardrobes) * * *
>
> * * * * * * *
>
> (12) Tea cosy covers.
> (13) Pin cushions.
>
> * * * * * * *

It is clear that beyond being made of textile, the items in this Note have little in common. TV Companions, however, do share the principal characteristic of such items as shoe bags and pajama bags. Hence, TV Companions seem more properly placed amongst these items than amongst the items listed in the Explanatory Note to heading 6304.

When the testimony of all three witnesses is viewed with respect to all of the headings under Chapter 63 and the Explanatory Notes thereto, it is clear to this Court that Congress did not intend for heading 6304 to

---

[4] *Harmonized Commodity Coding and Description System.*

include items with characteristics other than flat, protective and decorative. Accordingly, this Court finds that plaintiff has overcome its burden of proving Customs classification incorrect. This Court further finds that the articles in issue are properly classified under heading 6307.90.9989, as these articles are more akin to the articles set forth under heading 6307, and the Explanatory Notes thereto.

## CONCLUSION

For the foregoing reasons, this Court finds the articles in issue classifiable under heading 6307.90.9989. Customs' denial of protest is overruled. Customs is directed to so reclassify the articles and entries in issue accordingly.