**THK AMERICA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 97–34.
Court No. 94–06–00350.

United States Court of
International Trade.

March 26, 1997.

Order Amending Judgment
Order May 19, 1997.

Sonnenberg & Anderson (Steven P. Sonnenberg and Jacqueline M. Paez, Chicago, IL), for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney–in–Charge, New York City, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Saul Davis, Senior Trial Attorney), for defendant.

## OPINION

TSOUCALAS, Senior Judge.

Plaintiff, THK America, Inc. ("THK"), challenges the United States Customs Service's ("Customs") classification of its import linear motion guides ("LMGs") as other ball bearings under 8482.10.50 of the Harmonized Tariff Schedule of the United States ("HTSUS") and its import LMG parts as other ball bearing parts under HTSUS 8482.99.10. THK contends its imports are properly classified as housed bearings under HTSUS 8483.20.80 and as parts of bearing housings under HTSUS 8483.90.30 or, in the alternative, as ball bearings with integral shafts under HTSUS 8482.10.10. Customs counterclaims that certain parts of LMGs were improperly classified upon importation under HTSUS 8485.90.00. The Court has jurisdiction over this matter under 28 U.S.C. § 1581(a), 28 U.S.C. § 1583 and 19 U.S.C. § 1514(a).

### Background

THK's LMGs consist of two main components, one or more steel blocks and a matching "T-shaped" rail. Each block contains four rows of circulating steel balls, a retainer, plastic end plates, rubber seals and a grease nipple, and moves in a linear fashion along the rail while supporting a load. The rail, which has four longitudinal grooves ground along its upper portion, varies in length depending on the LMG's intended application. Mounting holes are drilled into the LMG blocks and the LMG rail.

In *THK America, Inc. v. United States*, 17 CIT 1169, 837 F.Supp. 427 (1993), the Court concluded that THK's LMGs were properly classified as other ball bearings under HTSUS 8482.10.50, and not, as THK contended, as other machinery parts under HTSUS 8485.90.00. Upon determining that there was no clear Congressional intent as to the meaning of the tariff term ball bearing, the Court had to construe the term according to its current common and commercial meaning. *See id.* at 1174, 837 F.Supp. at 432. The Court therefore consulted the American National Standard AFBMA Standard Terminology for Antifriction Bearings and Parts, THK's own pre–1986 catalogs and advertisements, and the relevant HTSUS Explanatory Note, concluding that the tariff term ball bearing was meant to include THK's LMGs. *Id.*

THK concedes that the Court's decision was technically correct with the evidence presented at the previous trial. However, THK now advances an entirely new claim, contending that it has become aware of certain technical points mandating a different result. In particular, THK claims that because its LMGs are "preloaded," they are not ball bearings but, instead, have the structure and function of housed bearings. Trial was held on this issue on October 29, 1996. At trial, THK voluntarily dismissed its alternative cause of action, which alleged its LMGs were properly classified as ball bearings with integral shafts. Tr. 4.

Customs classified the LMGs at issue as other ball bearings and parts thereof under the following HTSUS heading:

| 8482 | Ball or roller bearings, and parts thereof: | |
|---|---|---|
| 8482.10 | Ball bearings: | |
| | * * * | |
| *8482.10.50* | *Other* ........................................ | *11%* |
| | * * * | |
| 8482.99 | Other: | |
| *8482.99.10* | *Parts of ball bearings* ........................ | *11%* |

THK contends that this classification is incorrect and alleges the LMGs are properly classified as housed bearings and parts thereof under the following HTSUS heading:

| | | |
|---|---|---|
| 8483 | Transmission shafts (including camshafts and crankshafts) and cranks; bearing housings; housed bearings and plain shaft bearings;...; parts thereof: | |
| | * * * | |
| 8483.20 | Housed bearings, incorporating ball or roller bearings: | |
| | * * * | |
| *8483.20.80* | *Other* ................................................ | *5.7%* |
| | * * * | |
| 8483.90 | Parts: | |
| | * * * | |
| 8483.90.10 | .... | |
| | Parts of bearing housings and plain shaft bearings: | |
| | * * * | |
| *8483.90.30* | *Other* ........................................... | 5.7% |

---

## Discussion

Pursuant to 28 U.S.C. § 2639(a)(1) (1994), Customs' tariff classifications are presumed correct and the burden of proving that the assigned classification is erroneous is on the challenging party. *See, e.g., Nippon Kogaku (USA), Inc. v. United States,* 69 C.C.P.A. 89, 92, 673 F.2d 380, 382 (1982). To determine whether the challenging party has overcome the statutory presumption of correctness, the Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir.1984).

In the absence of legislative intent or a proven commercial definition of a tariff term, the Court must construe a tariff term in accordance with its common and commercial meaning. *See Lynteq, Inc. v. United States,* 976 F.2d 693, 697 (Fed.Cir.1992). In determining such a meaning, the Court may rely on its own understanding of the term and consult lexicographic and scientific authorities, as well as other reliable sources, including the testimony of expert witnesses. *See Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789 (Fed.Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Expert witness testimony "may properly be considered simply as advisory and as aiding the memory and understanding of the court, and it is not binding and may be accepted or rejected as appears proper." *Marubeni Am. Corp. v. United States,* 20 CIT ——, ——, 915 F.Supp. 413, 417 (1996) (citing *Tropical Craft Corp. v. United States,* 45 C.C.P.A. 59, C.A.D. 673, 1958 WL 7363 (1958)).

THK contends its LMGs are housed units containing ball bearings that are designed for accurate positioning through optimized friction and rigidity created by preloading. According to the testimony of Dr. Ali A. Seireg, an expert in machine design, lubrication and all types of bearings, a typical ball bearing, which is a type of antifriction bearing, is designed with clearance and is not preloaded.[1] *See* Tr. 34–37. Because of the ball bearing structure, its function is to *minimize* friction by rolling along tracks carrying loads and guiding motion. Tr. 40. In contrast, LMGs are not *anti* friction bearings but, rather, *generate* friction for control and positioning through preloading. Tr. 33–34, 40–41. Indeed, Dr. Seireg testified that preloading the LMG, particularly with its gothic arc construction, causes the balls to actually slide, drastically increasing friction. Tr. 41–42. Hence, Dr. Seireg maintains, the pressure created by preloading the LMGs pro-

1. For purposes of this opinion, preloading is the tightening of clearance by increasing the ball size in relation to the inner race and outer race, thereby simulating the pressure of a load. Tr. 86, 121. Clearance is the area between the ball and the space allocated for that ball that permits the free rotation of bearings by allowing a lubri-cating film to develop for the protection of bearing life and accommodating any changes in thermal expansion. Tr. 35. A preloaded bearing has no clearance and the pressure from the tightening produces a slight deformation of the rolling element, the ball. *See* Tr. 37–38, 87.

duces the friction and rigidity necessary for precise positioning control, as well as the repeatability of accurate positioning. *See* Tr. 40–43. Ball bearings cannot achieve this precise positioning and repeatability because they have clearance. Tr. 40–43.

Dr. Seireg concedes that all types of ball bearings may be preloaded. Tr. 66–68. Nevertheless, once preloading occurs, the function of the bearing changes and such bearings are no longer *ball* bearings, but preloaded bearings. *See* Tr. 70. Hence, Dr. Seireg asserts, a preloaded LMG could be referred to properly as a linear motion ball bearing *unit* or *system*, but not simply as a ball bearing. Tr. 32, 69–70.

THK claims this new evidence regarding preloading precludes classification of LMGs as ball bearings and the LMGs' structure and function compels their classification as housed bearings. With respect to the characteristics of housed bearings, Dr. Seireg testified that housed bearings are structured to: (1) support the bearing elements and protect them from the environment; (2) attach the bearing to a machine; and (3) enclose the lubricant. *See* Tr. 43–46. Dr. Seireg states that the block, railing, end plates and seals operate as a housing, as they combine to support and protect the bearing elements while enclosing the lubricant. Tr. 46. Further, the LMG is manufactured with the capability of mounting both the rail and block to a machine. *See* Tr. 45.

Defendant responds that, despite preloading, LMGs are indeed antifriction devices. According to the testimony of David D. Gridley, Executive Director of Marketing Services and Government Affairs for The Torrington Company and an expert in the marketing and selling of bearings, preloading is merely an application-specific choice and has no effect on an item's status as a bearing; precise positioning bearings can still be antifriction bearings if the bearing rolls on balls as opposed to sliding along surfaces. Tr. 87, 94. These ball-rolling elements distinguish LMGs from true "slide bearings," which have two races that rub and no balls. Tr. 93–95.

John C. Bandrowski, Chief Applications Engineer for Thompson Industries and an expert in housed bearings and linear motion guides, also disagrees with Dr. Seireg's assertion that LMGs are not antifriction bearings. Tr. 120–22. Mr. Bandrowski first notes that ball bearings are complete antifriction devices consisting of an outer ring, an inner ring and balls. Tr. 117–18. THK's LMGs satisfy this description since the balls are contained in the block, which functions as the outer race, while the rail that the block travels along provides the inner race. Tr. 117–18.

Mr. Bandrowski also refutes Dr. Seireg's testimony regarding preloading, contending that when a preloaded LMG is attached to a machine and carries an application load, the top balls shoulder more of the load and the lower balls come out of preload, allowing the LMG to ride smoothly along the races with low friction. Tr. 122. Therefore, while the LMG remains stiff to effect an accuracy specification, it operates properly by *reducing* friction. Tr. 123. Further, Mr. Bandrowski testified that, while preloading creates stiffness, which is necessary for accuracy, an actuation device is usually responsible for precise positioning. *See* Tr. 123–26.

Customs further argues that, structurally, LMGs are not housed bearings. According to the testimony of both Mr. Gridley and Mr. Bandrowski, there are several reasons why LMGs are distinct from housed bearings. First, housed bearings are typically comprised of *separate* commercial articles, a bearing housing and a bearing. *See* Tr. 84–85, 95–97, 131. In Mr. Gridley's experience, the term housed bearing is not used in the industry to denote shafts or rails but, rather, removable pillow blocks or mounted units enclosing a separate bearing. Tr. 97.[2] Further, housings are typically made of soft, inexpensive material such as cast iron, while the LMG casing is made of hardened steel to

---

2. Mr. Bandrowski reinforced this testimony, stating that his understanding of the term housed bearing is "a unit that is comprised of a separate ball bearing . . . and a separate housing." Tr.

128. The LMG structure, however, includes a shaft and rail, as well as a casing that contains part of the bearing elements. *See* Tr. 133.

adequately accommodate the steel balls that run directly on the casing. Tr. 98, 135. In addition, because the housed bearing housing is separate from the enclosed balls, the two parts are independently replaceable, while the entire LMG unit must be replaced in cases of failure. Tr. 103, 130. Finally, housings merely hold the balls, and so, are not important for "load and life" calculations, which constitute vital consumer information regarding the use and durability of a bearing and are computed by measuring the balls, inner race and outer race. Tr. 98–102, 138–40. In contrast, the LMG block and rail are both important for calculating load and life because they contain the balls, as well as the outer and inner races. Tr. 99.

Customs bolsters its argument by referring to THK's own LMG descriptions in pre–1986 catalogs and advertisements and U.S. patents, as well as certain HTSUS Explanatory Notes. In its earlier catalogs and advertisements and U.S. patents, THK described the LMG as a linear ball bearing, among other descriptions. *See* Tr. 119; Def.'s Exs. A–E, L1–10. In addition, Mr. Gridley and Mr. Bandrowski both testified that they interpret HTSUS Explanatory Note to Section 84.82, subsections (A)(2) and (3), to describe LMGs, while the Explanatory Note to Section 8483 suggests that LMGs are not housed bearings. *See* Tr. 104–08; 144–48.

This Court previously held that LMGs fall within the definition of ball bearings, stating that LMGs are merely "an improved version of a linear ball bearing." *THK*, 17 CIT at 1176, 837 F.Supp. at 434. Despite the new evidence presented at trial by THK regarding preloading, the Court remains convinced that THK's LMGs properly fall under the definition of ball bearings.

First, a ball bearing is structurally comprised of an inner race, an outer race, and balls, all of which LMGs contain. The uncontroverted testimony indicates that the LMG casing provides built-in inner races with balls, and the rail grooves function as the outer races. Tr. 117–18.

Second, the Court finds that, despite preloading, LMGs function as ball bearings. As a preliminary matter, competing testimony was presented over whether all of THK's LMGs are preloaded since the evidence demonstrates that ball bearings may be preloaded and LMGs may not be preloaded. According to Mr. Bandrowski, a recent THK catalog indicates that THK manufactures the same model LMG in three different stages of clearance. Tr. 119–20, 158 (referring to Pl.'s Ex. 3, at 134). While Dr. Seireg testified that all THK LMGs, by their nature, are preloaded, Tr. 61, upon inspection by the Court, THK's own catalog states that certain LMGs are available in the following stages of clearance: "normal," "light preload" and "medium preload." *See* Pl.'s Ex. 3, at 134; *see also id.* at 230. Hence, it appears that at least certain THK LMGs are not preloaded and are available with "normal" clearance.

Conflicting expert testimony was presented regarding the effect of preloading on the classification of LMGs. Based on this testimony, the Court is not convinced that preloading LMGs precludes their classification as ball bearings. Although there are several acceptable definitions of ball bearings, essentially all state that a ball bearing permits free motion between moving and fixed parts by utilizing balls rolling on a raceway. *See, e.g.,* McGraw–Hill Dictionary of Scientific and Technical Terms 175 (4th ed. 1989); 1 McGraw–Hill Encyclopedia of Science & Technology 601 (5th ed. 1982). In Dr. Seireg's own words, the "function, since ancient times, of using rolling motion is to minimize friction, carry loads and ... guide the motion." Tr. 32. As Mr. Bandrowski testified, in operation, the lower balls come out of preload, allowing the LMGs to carry an application load smoothly. Tr. 122. Hence, LMGs clearly operate as ball bearings, carrying a load utilizing a ball-rolling motion.[3]

The Court's position is not inconsistent with Dr. Seireg's testimony, as LMGs are

---

3. Dr. Seireg testified that preloading causes certain LMG balls to actually slide at times, significantly increasing friction. Tr. 41–42. Despite this sliding, the Court agrees with Mr. Gridley and Mr. Bandrowski that the LMG primarily functions as a ball bearing, reducing friction enough to enable loads to be carried in a stiff ball-rolling motion along a raceway.

clearly high friction bearings designed for control and precise positioning. However, while preloading THK's LMGs may not allow friction to be reduced as much as other ball bearings in order for LMGs to accomplish their task, they unquestionably permit movement between two entities by reducing friction, and so, are antifriction ball bearings.

The position that LMGs are ball bearings is also supported by THK's pre–1986 catalogs and advertisements, THK's U.S. patent language and the Explanatory Note dealing with Section 8482. Dr. Seireg testified that an LMG is a conglomerate linear unit that houses a ball bearing. *See* Tr. 32, 45, 57, 69. Further, certain catalog and patent language refers to the LMG as a "linear motion ball bearing *unit*" and "linear ball bearing *unit.*" *See generally* Def.'s Exs. A–E, L1–3, 5–6. Nevertheless, THK repeatedly refers to the LMG as a ball bearing, explicitly admitting that it is commonly and commercially known as such. *See generally* Def.'s Exs. A–E, L1–10.

The Explanatory Note for Section 8482 also supports this position. The Court notes that the Explanatory Notes are the official interpretation of the HTSUS, but are not legally binding. *See* Omnibus Trade and Competitiveness Act of 1988, Conference Report to Accompany H.R. 3, Conf.Rep. No. 576, 100th Cong., 2d Sess. 549 (1988) ("while they should be consulted for guidance, the Explanatory Notes should not be treated as dispositive"). Mr. Gridley and Mr. Bandrowski observe that the Explanatory Note for ball bearings, 84.82(A), expressly includes **"slide mechanisms with bearing balls,"** and lists certain examples encompassing LMGs.[4] *See* Tr. 105–06, 144–46. Mr. Gridley testified

that LMGs fall within this primary description since, despite their preloaded nature, their balls roll, creating a sliding motion across the rail. Tr. 95. As this Court stated in *THK,* 17 CIT at 1176, 837 F.Supp. at 434, and as the uncontroverted testimony in this case indicates, this Explanatory Note accurately describes THK's LMGs since the LMGs slide across a rail with bearing balls.[5]

Consequently, THK has not overcome Customs' presumption of correctness and the Court finds no reason to depart from its position in *THK,* 17 CIT at 1176, 837 F.Supp. at 434, that THK's LMGs are structurally and functionally ball bearings. With respect to Customs' counterclaim, the import LMG parts were therefore improperly classified as other machinery parts under HTSUS 8485.90.00 and are properly classified as ball bearing parts under HTSUS 8482.99.10.

## JUDGMENT

This case, having been duly submitted for decision following trial *de novo,* and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that the United States Customs Service's ("Customs") classification of THK America, Inc.'s ("THK") import linear motion guides ("LMGs") as other ball bearings under 8482.10.50 of the Harmonized Tariff Schedule of the United States ("HTSUS") and its import LMG parts as other ball bearing parts under HTSUS 8482.99.10 is upheld; and it is further

**ORDERED** that Customs shall reliquidate under HTSUS 8482.99.10 the THK LMG

---

4. The Court finds the following example particularly relevant: "(2) The restricted-travel type, of steel, comprising a grooved cylinder, a ball cage and a housing." Explanatory Notes, Section 84.82, subsection (A)(2).

5. The Court further agrees with Mr. Gridley and Mr. Bandrowski that the Explanatory Note to THK's proposed section, HTSUS 8482, indicates that bearing housings are separate from ball bearings themselves. *See* Tr. 108, 147. The relevant Explanatory Note language states the following: "Bearing housings incorporating ball, roller or needle roller bearings remain classified in this heading; but ball, roller or needle roller

bearings presented separately fall in **heading 84.82."** Explanatory Notes, Section 84.83, subsection (B).

The Court also finds it significant that the HTSUS article description that THK suggests for LMG parts, HTSUS 8483.90.30, specifies that it encompasses "[other] parts of bearing housings and plain shaft bearings." This language supports the position that the HTSUS 8483 references to housed bearings contemplates separate items (*i.e.,* a housing and a bearing), as it specifically refers to parts of bearing *housings* and there is no other provision in HTSUS 8483 for parts of conglomerate *housed bearings.*

parts imported under HTSUS 8485.90.00; and it is further

**ORDERED** that this case is dismissed.

Slip Op. 97–61

### ORDER

Upon reading defendant's motion to amend the judgment order to allow for the payment of interest from the date the counterclaim was first asserted; upon consideration of plaintiff's response; upon consideration of other papers and proceedings had herein, and upon due deliberation, it is hereby

ORDERED that defendant's motion shall be and hereby is granted, and that the judgment order in Slip Op. 97–34, is hereby amended by adding the following after the last paragraph of the present judgment order, as per attachment A:

ORDERED, that plaintiff pay to the defendant all of the increases in duty assessed upon reliquidation of the entries encompassing the parts of LMGs, which is the subject of the counterclaims, including interest in accordance with 28 U.S.C. § 1961(a) and (b), from the date the answer asserting the counterclaims was filed until the date the additional duties are paid, said interest to be calculated in accordance with 26 U.S.C. § 6621. The counterclaim with respect to the entries covered by Court No. 94-06-00350 was first asserted on March 2, 1995, when the answer was filed.